**Wayne F. MacCORMICK**

v.

**Christopher W. MacCORMICK.**

Supreme Judicial Court of Maine.

Argued May 3, 1984.

Decided June 6, 1984.

---

11. *See supra* note 3 (reproducing section 1312–C).

12. *See supra* note 1 (reproducing OAS statute).

Kim Matthews (orally), Portland, for plaintiff.

Morton & Sheldon, John C. Sheldon (orally), Farmington, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

In its judgment granting a divorce to Wendy MacCormick, the wife, the District Court (Farmington) ordered that custody of two minor children be awarded to Christopher MacCormick, the husband. From the Superior Court's order affirming that judgment the wife now appeals to the Law Court. Because we agree with her contention on appeal that the District Court committed reversible error in refusing to allow her to make an offer of proof allegedly relevant to the child custody issue, we order the judgment of the District Court to be vacated and remand the case for rehearing of the custody and any related issues.[1]

The facts pertinent to this appeal may be quickly stated. On May 6, 1982, the wife filed a complaint for divorce in District Court alleging irreconcilable differences. On June 17, 1982, an order was entered awarding her temporary custody of the two minor children, one being then 25 months old and the other, four months. Hearings were held before the District Court on seven different dates from September 9, 1982, through January 25, 1983. The evidence adduced at the hearings focused on the custodial arrangement that each party proposed to provide the children after the divorce. The husband produced evidence indicating that when the children were in the custody of the wife they were frequently present at the household of the wife's

---

1. The wife also challenges the adequacy of the District Court's findings of fact and the sufficiency of the evidence supporting those findings. Because we hold that the District Court committed reversible error in refusing to permit an offer of proof, we do not reach those other claims of error.

employer, which the husband attempted to show was an unwholesome environment for children. The husband also presented evidence pertinent to the custodial arrangement he would provide if he were awarded custody of the children. He testified that, in that event, he would reside in Aurora, New York, with his parents. The husband's parents both testified that they would be able to accommodate Christopher and the children and would welcome their presence at the family home in New York. The husband's sister, Marion MacCormick, testified that if Christopher brought the children to New York she would quit her job in North Carolina and move back to her parents' home to become the children's principal caretaker.

Marion MacCormick and her parents, all of whom appeared as witnesses for the husband, were permitted to testify out of order on the first day of the hearing because they had traveled some distance from out of state. During the direct examination of the wife, who testified about a month and a half after Marion MacCormick, the wife was asked about statements that Marion MacCormick had purportedly made to her regarding Marion's feelings toward Christopher. After the trial judge excluded the proffered testimony on the ground that it constituted hearsay, the wife's counsel sought to make an offer of proof. The judge refused to allow the offer of proof, indicating that he believed it improper for a judge sitting as a finder of fact without a jury to hear evidence that had been ruled inadmissible.[2]

M.R.Evid. 103(a) provides that error may not be predicated on a ruling of the trial court excluding evidence unless the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Where an offer of proof is necessary, it serves two purposes: first, to enable the trial judge to rule advisedly and, second, to present a basis for appellate determination whether the trial judge's ruling was erroneous and, if so, whether the error was prejudicial. *See Utz v. Utz*, 273 A.2d 303, 304 (Me.1971); *see also State v. Clark*, 475 A.2d 418, 421 n. 2 (Me.1984) (the purpose of an offer of proof is not only to apprise the appellate court of the scope and effect of the ruling but also to persuade the trial judge to change his mind and admit the evidence); *State v. Rich*, 395 A.2d 1123, 1130 (Me.1978), *cert. denied*, 444 U.S. 854, 100 S.Ct. 110, 62 L.Ed.2d 71 (1979); *State v. Davis*, 155 Me. 430, 431, 156 A.2d 392, 393 (1959); Field & Murray, *Maine Evidence* § 103.4, at 9 (1976).

At the trial level, failure to make an offer of proof deprives the trial judge of the opportunity to "double check" his exclusionary ruling after becoming fully informed of the nature of the proffered evidence. *See State v. Davis*, 155 Me. at 431, 156 A.2d at 393. At the appellate level, failure to make an adequate offer of proof renders it impossible for the reviewing court to determine whether the exclusionary ruling was erroneous, *see J.F. Singleton Co. v. Rush*, 463 A.2d 282, 283 (Me. 1983); *Pratt v. Freese's, Inc.*, 438 A.2d 901, 905 (Me.1981); *State v. Rich*, 395 A.2d at 1130, and if the ruling was erroneous, whether the error was prejudicial, *see Gross v. Martin*, 128 Me. 445, 48 A. 680 (1930). On the basis of these considera-

---

2. The following colloquy occurred:
   [WIFE'S COUNSEL]: May I make an offer of proof?
   COURT: Well, I'm going to hear that, aren't I? I mean I'm going to hear the offer, if you do that, I'm going to hear it. This, in a jury case, where they could leave, and I could put it on the record, and then they could come back. I guess I'll have to bite the bullet, and, you know, if I'm making a mistake now, everybody is protected, and they're on the record, and that's good. If I make a mistake, it should be corrected. I'm going to conclude that it's objected to, and it is objectionable, and we'll see what the next question is.
   [WIFE'S COUNSEL]: Does anybody want to note for the record—
   COURT: Yes.
   [WIFE'S COUNSEL]: —I, except, e-x-c-e-p-t from the willing [*sic*, ruling]—
   COURT: Oh yes, you wanted to make an offer of proof, and I didn't think I could allow that. I'm trying to think how I'd allow it on the tape and then not concern myself with it. So, we'll continue from there.

tions, we have consistently refused to take cognizance of claims of error in exclusionary rulings where no offer of proof has been made. *See, e.g., J.F. Singleton Co. v. Rush,* 463 A.2d at 283; *Pratt v. Freese's, Inc.,* 438 A.2d at 905; *Gaynor v. McEachern,* 437 A.2d 867, 870 (Me.1981); *Roy v. Inhabitants of City of Augusta,* 414 A.2d 215, 218 (Me.1980); *Banville v. Huckins,* 407 A.2d 294, 298 (Me.1979); *State v. Rich,* 395 A.2d at 1130; *Utz v. Utz,* 273 A.2d at 304.

▮▮▮▮ Often in the past we have made it abundantly clear that a proper offer of proof is a fundamental step for any litigant in adequately preserving a claim of error for appeal. For the trial court to deprive a party of the opportunity to make an offer of proof following a ruling excluding evidence is to deprive the party of the right, guaranteed by statute and rule,[3] to have a meaningful review of the trial court's action. Thus, it is reversible error to refuse without justification to allow a party to make an offer of proof. *See State v. Davis,* 155 Me. at 432, 156 A.2d at 393. Our holding in *Davis* is in accord with innumerable decisions throughout the country, of which representatives are set forth in the margin.[4] *See also* 1 Wigmore, *Evidence* § 20a, at 859, 862 n. 5 (Tillers rev. 1983); 88 C.J.S. *Trial* § 73, at 179 (1955); Annot., 89 A.L.R.2d 277, 286–87 (1963). *Cf. Standards for Criminal Justice, Special Functions of the Trial Judge,* Standard 6–2.4 (1980) ("The trial judge should respect the obligation of counsel ... to make offers of proof").

▮▮▮ In the case at bar, there was no justification for the trial court's denial of the opportunity for making an offer of proof. The situation was not one where an offer was unnecessary because the sub-stance of the evidence was "apparent from the context within which questions were asked." M.R.Evid. 103(a)(2). The need for the offer is made abundantly clear by the state of the appellate record. The testimony that the court excluded was addressed to statements that Marion MacCormick allegedly had made "as to her state of mind regarding Chris." The court excluded the question on the ground of hearsay. If, as the wife's counsel indicated to the court, the proposed testimony addressed Marion's own "feelings towards Christopher," the testimony might have qualified for the exception to the hearsay rule for "statement[s] of the declarant's then existing state of mind." *See* M.R.Evid. 803(3). If, on the other hand, the proposed testimony consisted of Marion's assessment of Chris's parenting abilities, it would have been beyond the scope of the exception as a statement of belief offered to prove the fact believed. *See id.; see also* Field & Murray, *Maine Evidence* § 803.3, at 212–13 (1976). We will not speculate. Suffice it to say that the substance of the proposed testimony is not clear enough in the record preserved for appeal for this court to review the trial court's exclusionary ruling. *Cf. People v. Brown,* 27 Ill.App.3d 569, 577, 327 N.E.2d 51, 56–57 (1975) (no error in refusing to allow offer of proof where nature of evidence is clear and is preserved on the record and evidence was subsequently fully presented to jury during cross-examination).

Even if we assume that the trial court erred in excluding the proffered testimony, we cannot hold that the error was harmless. Testimony regarding the feelings of Marion MacCormick, who was proposed as a surrogate mother, toward the father was clearly relevant to a hotly contested issue

---

3. *See* 14 M.R.S.A. §§ 1851, 1901 (1980); M.R. Civ.P. 73; M.D.C.Civ.R. 73. *See also* 15 M.R.S.A. §§ 2111, 2115 (1980 & Supp.1983–1984); M.R. Crim.P. 37; M.D.C.Crim.R. 37.

4. *See, e.g., Ex parte Fields,* 382 So.2d 598, 599 (Ala.1980); *Musachia v. Terry,* 140 So.2d 605, 608 (Fla.Dist.Ct.App.1962); *Jones v. State,* 306 So.2d 57, 58 (Miss.1975); *Bextermueller v. Busken,* 376 S.W.2d 621, 630 (Mo.Ct.App.1964); *State*

*v. Johnson,* 46 N.J. 289, 291, 216 A.2d 392, 393 (1966); *State v. Flohr,* 301 N.W.2d 367, 373 (N.D.1980); *In re Estate of Vallish,* 431 Pa. 88, 95–96, 244 A.2d 745, 749 (1968); *Barci v. Intalco Aluminum Corp.,* 11 Wash.App. 342, 346, 522 P.2d 1159, 1162 n. 1 (1974); *State v. Cokeley,* 226 S.E.2d 40, 15 (W.Va.1976); *Jones v. Clark,* 418 P.2d 792, 798–99 (Wyo.1966).

in the case, the relative merit of the parties' proposed custodial arrangements. Without a proper offer of proof we cannot guage what effect the excluded testimony would have had on the finder of fact. Nor does this case fall within any one of the other limited sets of circumstances under which other jurisdictions have held that it was not reversible error for the trial court to disallow an offer of proof. *See Johnson v. State*, 338 So.2d 252, 253 (Fla.Dist.Ct. App.1976) (error in refusing to allow offer of proof harmless where proposed evidence was only remotely relevant and was testified to by another witness); *People v. Brown*, 89 Ill.App.3d 852, 858–59, 45 Ill. Dec. 229, 412 N.E.2d 580, 585 (1980) (error in refusing to allow offer of proof harmless where trial court could surmise from context of question asked that testimony would be merely cumulative); *People v. Boyce*, 51 Ill.App.3d 549, 559–60, 9 Ill.Dec. 403, 366 N.E.2d 914, 922 (1977) (no error in refusing to allow offer of proof regarding testimony of prospective witness where refusal based on offering party's failure to obtain witness at proper stage of trial, where all facts necessary for review of that procedural ruling were on record, and where trial court did not err in excluding testimony on the procedural ground); *State v. Moore*, 47 Ohio App.2d 181, 192–93, 353 N.E.2d 866, 876 (1973) (error in excluding offer of proof harmless since offer went to results of polygraph test, inadmissible as a matter of law); *State ex rel. Schlehlein v. Duris*, 54 Wis.2d 34, 39, 194 N.W.2d 613, 616 (1972) ("A trial judge need not, in fact should not, permit offers of proof as to matters that are clearly immaterial, irrelevant, without proper foundation, or by incompetent witnesses").

■ The trial judge's remarks suggest that he believed it improper for a judge sitting as factfinder to hear, through an offer of proof, evidence that he had already ruled to be inadmissible; that the impartiality of his factfinding would thereby be put at risk. Under our system of nonjury trials, however, the judge's receipt of offers of proof is not only proper, but absolutely necessary if he is to carry out his full judicial responsibilities. In hearing a case without a jury, the judge performs two separate functions: he both makes rulings of law, as he does in jury trials, and also finds the facts from the evidence that he rules admissible. *See Bianchi v. Denholm & McKay Co.*, 302 Mass. 469, 471–72, 19 N.E.2d 697, 698 (1939); *see also Qualey v. Fulton*, 422 A.2d 773, 775 (Me.1980); 76 Am.Jur.2d *Trial* § 1239 (1975); 89 C.J.S. *Trial* § 574 (1955). Where jurors are involved, those lay factfinders are isolated from hearing offers of proof until the judge has ruled the proffered evidence to be admissible:

> In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

M.R.Evid. 103(c). In contrast, the Maine Rules of Evidence *require* that in nonjury hearings, as in jury trials, the substance of the excluded evidence be "made known to the court...." M.R.Evid. 103(a)(2). In the face of that rule, isolation of the factfinder in bench trials could be accomplished only by having two judges sit in every such case, one to rule on the admissibility of evidence and the other, to find the facts. Such is, for obvious practical reasons, not the way nonjury cases are tried in our Anglo-American judicial system.

■ The integrity of the factfinding process in a nonjury case depends upon the professional training and experience of the presiding judge in maintaining a separation of his functions of ruling on legal questions and finding the facts. He has the responsibility, long reposed in our judiciary, of assuring that his mental processes in factfinding are not "tainted" by inadmissible evidence. *See* E. Cleary, *McCormick on Evidence* § 60, at 137 (2d ed. 1972). *See generally* K. Davis, *Hearsay in Nonjury Cases*, 83 Harv.L.Rev. 1362 (1970); Levin & Cohen, *The Exclusionary Rules in Nonjury Criminal Cases*, 119 U.Pa.L.Rev. 905

(1971); Note, *Improper Evidence in Non-jury Trials: Basis for Reversal?*, 79 Harv. L.Rev. 407 (1965); Comment, *Exclusionary Rules of Evidence in Non-Jury Proceedings*, 46 Ill.L.Rev. 915 (1952); 76 Am.Jur.2d *Trial* §§ 1241–1244 (1975); 89 C.J.S. *Trial* § 589 (1955).

It is true that judges, being flesh and blood, are subject to the same emotions and human frailties as affect other members of the specie; however, by his legal training, traditional approach to problems, and the very state of the art of his profession, he must early learn to perceive, distinguish and interpret the nuances of the law which are its "warp and woof."

*State v. Hutchinson*, 260 Md. 227, 233, 271 A.2d 641, 644 (1970). It is trial judges' experience and training, and their long tradition of professionalism, that give rise to the firmly established rule that a

court learned in the law is presumed to render its decision on the evidence in the case which is legally admissible even though inadmissible testimony be received. This presumption must be rebutted before the reception of such evidence by the court will be deemed prejudicial.

*Lipman Bros. v. Hartford Accident & Indemnity Co.*, 149 Me. 199, 215, 100 A.2d 246, 255 (1953). *See also State v. Williams*, 387 A.2d 27, 30 (Me.1978); *State v. Gleason*, 359 A.2d 308, 312 (Me.1976).

Judges must conscientiously keep separate their functions as interpreters of the law and finders of the facts. We sympathize with the concern of the trial judge in the present case that the separation of the two functions is not always easy. That concern, however, must not override the need for proper preservation of litigants' appellate rights.

The entry is:

Judgment of the Superior Court vacated.

Case remanded to the Superior Court for entry of order vacating the District Court judgment and remanding for new trial on the child custody and related issues.

All concurring.