STATE of Maine

v.

Christine Davignon CASE.

Supreme Judicial Court of Maine.

Argued Nov. 3, 1995.
Decided March 5, 1996.

Stephanie Anderson, District Attorney, Julia Sheridan, (orally), Assistant District Attorney, Portland, for the State.

William Maselli (orally), Auburn, for Defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Christine Davignon Case appeals from the judgments of conviction entered in the Superior Court (Cumberland County, *Crowley, J.*) on the jury verdicts finding her guilty of burglary in violation of 17–A M.R.S.A. § 401 (1983 & Supp.1995); robbery while armed with a firearm in violation of 17–A M.R.S.A. § 651(1) (1983); and kidnapping in violation of 17–A M.R.S.A. § 301 (1983). She contends that (1) the court erred by excluding relevant evidence, (2) the State's improper statements during its closing summation denied her a fair trial, and (3) the court erred in refusing to instruct the jury on the defense of voluntariness, duress, competing harms and self-defense. Finding no error in the record, we affirm the judgments.

From the evidence adduced, the jury could have found the following facts: At approximately 10:00 p.m. on April 28, 1992, Christine and Steven Case [1] broke into the Yarmouth residence of Howard Small. They entered Small's bedroom where he was sleeping, awakened him and demanded money. Both Christine and Steven wore masks and were armed with a firearm. Steven handcuffed Small to the bedpost, instructed Christine, whom he addressed as "Tommy," to keep her gun pointed at Small, searched the bedroom, removing about $375 from Small's wallet, and then left the bedroom. During his absence, although Christine kept a gun pointed at Small, he was able to push a bedside alarm system, but was unaware whether in fact it was activated. On Steven's return to the bedroom, Small, thinking the alarm system in the basement room where a safe was located would be activated by opening the door to that room, advised him there was money in the safe located in the basement. The handcuff was unlocked and Small walked downstairs between Christine and Steven. On reaching the room where the safe was located Small was handcuffed to a column in the room. Small disclosed the combination to the safe. While Steven kept a gun pointed at Small, Christine opened the safe, removed $10,000 contained in the safe and handed it to Steven. Prior to leaving the room and closing the door, Christine unfastened the handcuff and Steven warned Small not to leave the room. The police arrived and intercepted Christine and Steven before they could escape.[2]

I

Immediately prior to the trial of the charges against Christine, the State filed a motion *in limine* seeking a pretrial ruling on the admissibility of the testimony of Christine's expert witness, Charles Robinson, a clinical and forensic psychologist. At the *voir dire* examination of Robinson, without the presence of the jury, the following evidence was proffered based upon the information given to Robinson by Christine: As a child she had been sexually abused by her alcoholic father and a male neighbor, and at the age of fifteen she had been raped by two strangers. Some months prior to April 28, 1992, she had returned to her mother's home to discover that her mother had attempted to

---

1. At the time of the trial, Christine had married Steven.

2. In a separate proceeding, judgments of conviction were entered against Steven Case on his pleas of guilty to the charges of burglary, robbery with a firearm and kidnapping.

hang herself. Because of her training as a nurse's assistant, she had been able to resuscitate her mother, but later had to make arrangements with the hospital for removal of life support treatment when advised that her mother was brain dead. Robinson also testified that Christine had related to him three incidents when Steven had physically abused her, one of which occurred in 1991. He could not recall the dates of the other incidents. She also related to him an incident when Steven had threatened a man by putting a gun in his mouth, but could not recall the date of that incident. Robinson opined that, because of these occurrences, Christine had developed an excessive fear of abandonment, that she became pathologically devoted to Steven, suffered from blind obedience to him, and that, in his opinion, she had participated in the charged offenses because of fear of abandonment by Steven, and not because of a conscious choice to do so. He opined that incidents occurring after April 28, 1992, would not have affected her state of mind on that date, but would demonstrate Steven's "profound control of her mind." He stated that his conclusions and opinions as to Christine's state of mind would be the same even·if Steven had "never laid a hand on her," and it was her fear of abandonment and not physical abuse that prompted her charged conduct.

Based on Robinson's proffered testimony, the trial court ruled that Robinson could testify concerning Christine's abnormal state of mind and criminal intent but would not be permitted to testify on voluntary conduct, competing harms, duress or self-defense.

Christine filed a motion *in limine* requesting the court to allow witnesses on her behalf to testify as to changes in her behavior from the period she started dating Steven in the fall of 1991 up to April 28, 1992, to corroborate Robinson's expected testimony "as to reasonable doubts relative to [Christine's] exercising a conscious choice." Based on the offer of proof, the court determined the witnesses would be permitted to testify as to the specifics of incident encompassed in Robinson's testimony but not to generalized changes they observed in her conduct. From the judgment entered on the jury's verdicts finding Christine guilty of the charged offenses, she appeals.

## II

■ Christine contends the trial court erred in excluding testimony regarding incidents of her abuse by Steven after April 28, 1992, and the changes in her general behavior that occurred after she began dating Steven. She argues that the evidence was relevant to her state of mind at the time the charged offenses were committed as well as her ability to form the necessary intent. The decision to admit or exclude evidence is reviewed for an abuse of discretion "because the question of admissibility frequently involves the weighing of probative value against considerations militating against its admissibility." *State v. Robbins,* 666 A.2d 85, 87 (Me.1995) (citing *State v. Robinson,* 628 A.2d 664, 666 (Me.1993)); M.R.Evid. 403. We have previously stated that the testimony of lay persons "cannot be deemed evidence legally sufficient to raise a reasonable doubt that on the particular occasion at issue defendant had acted 'intentionally· or knowingly' without evidence 'tending to show some impairment of defendant's cognitional or volitional faculties.'" *State v. Barrett,* 577 A.2d 1167, 1170 (Me.1990) (citing *State v. Sommer,* 409 A.2d 666, 669 (Me.1979)).

■ At the time Robinson's testimony was offered to the jury in response to an objection by the State, the trial court properly determined, based on Robinson's opinion at the time of the *voir dire* examination, that he could testify to incidents related to him by Christine that had occurred prior to April 28, 1992, as well as the incidents for which he had no specific date but reasonably believed had occurred before the date of the charged crimes. Robinson's testimony focused on Christine's abnormal state of mind at the time of the charged offenses and on her relationship with Steven. Because the excluded testimony of the non-expert witnesses was conclusory and general in nature, and was not relevant to her "fear of abandonment by Steven" on the date of the charged offenses, the error, if any, in excluding it was harmless. M.R.Crim.P. 52(a).

## III

■ Contrary to Christine's next contention, we find no error, much less obvious error, that deprived her of a fair trial in the statements made by the State in its closing summations. M.R.Crim.P. 52; M.R.Evid. 103; *State v. Bahre,* 456 A.2d 860, 864–65 (Me.1983).

## IV

Christine finally contends that because there was evidence to support these defenses the trial court erred by refusing her request to instruct the jury on voluntariness, duress, competing harms and self-defense. We disagree. We have previously stated:

> Pursuant to 17–A M.R.S.A. § 101(1) (1983), the State must disprove beyond a reasonable doubt any statutory defense "in issue as a result of evidence admitted at the trial which is sufficient to raise a reasonable doubt on the issue." A defense is "in issue" within the meaning of section 101 if the evidence is "sufficient to make the existence of all the facts constituting the defense a reasonable hypothesis for the factfinder to entertain." Either the State or the defense may introduce the evidence that generates the State's obligation.

*State v. Begin,* 652 A.2d 102, 106 (Me.1995) (citation omitted).

### A. *Voluntary Conduct*

■ Pursuant to 17–A M.R.S.A. § 31 (1983) a person commits a crime "only if he engages in voluntary conduct." The Model Penal Code has defined "voluntary" in terms of the meaning of involuntary actions: reflexes, convulsions, movements during unconsciousness or sleep or actions resulting from hypnotic suggestion. MODEL PENAL CODE § 2.01(2) (1985). We have accepted the following definition of "voluntary": To be voluntary an act must be the result of an exercise of defendant's conscious choice to perform [it], and not the result of reflex, convulsion, or other act over which a person has no control. *State v. Mishne,* 427 A.2d 450, 458 (Me.1981). *See also State v. Flick,* 425 A.2d 167, 171 (Me.1981) (legal concept of voluntariness pursuant to section 31 distinguishes

such conduct from reflex or nonvolitional action). The record reflects no evidence proffered by a witness or offered at the time of the trial from which the jury reasonably could find that Christine's conduct on April 28, 1992, was involuntary.

### B. *Duress*

■ Duress is a defense "when a defendant engages in conduct which would otherwise constitute a crime, he is compelled to do so by threat of imminent death or serious bodily injury to himself or another person or because he was compelled to do so by force." 17–A M.R.S.A. § 103–A (1983). "[C]ompulsion exists only if the force, threat or circumstances are such as would have prevented a reasonable person in the defendant's situation from resisting the pressure." *Id.* Here, the evidence was that Christine committed the charged offenses because she feared abandonment by Steven, not because she feared "imminent death or bodily injury" to herself or another.

### C. *Competing Harms*

■ Otherwise criminal conduct is justified if the desirability and urgency of avoiding imminent physical harm to the defendant or to another outweighs, according to the ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the crime charged. 17–A M.R.S.A. § 103(1) (1983). *See also State v. Moore,* 577 A.2d 348, 350 (Me.1990) (must be evidence conduct was necessary because of specific and imminent threat of harm to defendant or another leaving no reasonable alternative to violating the law). Contrary to Christine's contention, there is no evidence that she did not have a reasonable alternative to engaging in the charged conduct to protect herself, Steven, or Small from a specific and imminent threat of harm.

### D. *Self-defense*

■ We have long recognized that the law relating to self-defense is designed to afford protection to one beset by an aggressor and confronted by necessity not of his own making. *State v. Millett,* 273 A.2d 504,

509 (Me.1971). This defense is specifically articulated in 17–A M.R.S.A. § 108 (1983 & Supp.1995), that provides in pertinent part:

> A person is justified in using a reasonable degree of nondeadly force upon another person in order to defend himself or a 3rd person from what he reasonably believes to be the imminent use of unlawful, nondeadly force by such other person, and he may use a degree of such force which he reasonably believes to be necessary for such purpose.

On the evidence in this record, it cannot be said that Christine could reasonably believe it necessary to defend herself or another from the imminent use of unlawful, nondeadly force.

Because the statutory defenses claimed by Christine were not generated by the evidence, the trial court properly refused to instruct the jury as to those defenses.

The entry is:

Judgments affirmed.

All concurring.