2000 ME 200

**STATE of Maine**

v.

**David McMAHAN.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 18, 2000.

Decided Nov. 13, 2000.

Geoffrey A. Rushlau, District Attorney, Eric J. Walker, Asst. Dist. Atty., Rockland, for State.

Andrews B. Campbell, Andrews Bruce Campbell, P.A., Thomaston, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] David McMahan appeals his conviction for assault (Class D), 17–A M.R.S.A. § 207 (1983 & Supp.2000), after a jury waived trial by the Superior Court (Knox County, *Marsano, J.*). On appeal, McMahan contends that: (1) the court improperly interpreted and applied the evidence in several respects relating to the issue of provocation and his self-defense justification, 17–A M.R.S.A. § 108 (1983 & Supp. 2000); (2) the court erred in excluding evidence of a civil suit against McMahan by Gerald Brown, the victim of the assault, and in excluding other relevant evidence; and (3) the court improperly refused to hear an offer of proof and directed that the

offer of proof occur in the court's absence during a recess. Because the court did not perform its required judicial function in first hearing and then ruling on relevant evidence in McMahan's offer of proof, we vacate the conviction.

## I. CASE HISTORY

[¶ 2] David McMahan and Gerald Brown were lobstermen who fished the waters around Criehaven, a small island approximately 20 miles off the Maine coast near Matinicus Island. Brown and McMahan had apparently had some professional differences, based on the view of Brown and some other lobstermen that McMahan may have been fishing more traps than was considered proper in the area.

[¶ 3] In March 1999, Brown discovered an obscene drawing on his polyball.[1] Brown believed that McMahan was responsible for the drawing. On April 1, 1999, as Brown was operating his boat, he saw McMahan working on McMahan's dock. A verbal confrontation ensued with, according to the record, a number of salty, down-east expressions being exchanged. The confrontation escalated when Brown docked his boat and ultimately went onto McMahan's dock to confront McMahan. There the verbal confrontation turned physical with McMahan using a gaff to hit Brown and, according to McMahan, Brown using a pitchfork to jab at McMahan and another lobsterman who was with him. As a result of the confrontation, Brown had a number of injuries and was bleeding from the head. After driving his boat to the mainland, with the assistance of his sternman, Brown sold his lobsters, put his boat on its mooring, and then drove himself to the hospital.

[¶ 4] Brown reported the incident to the Knox County Sheriff's Office. McMahan was indicted by the Knox County Grand Jury on one count of aggravated assault

1. A polyball is a large, round vinyl ball with a variety of uses in the commercial fishing trade. In this case, the ball was used to mark the location of lines to a boat mooring and kept those lines suspended in the water.

(Class B), 17-A M.R.S.A. § 208 (1983).[2] McMahan pled not guilty to the charge and waived a jury trial pursuant to M.R. Crim P. 23(a).

■ [¶ 5] A bench trial was held January 4-6, 2000. At trial, the principal issues were provocation and self-defense justification, 17-A M.R.S.A. § 108(1) (1983),[3] with McMahan contending that he was provoked and that he acted to defend himself from a physical assault. With the issues so raised, the State had the burden of proving assault and disproving McMahan's justification beyond a reasonable doubt. *See State v. Sullivan,* 1997 ME 71, ¶ 6, 695 A.2d 115, 117; *State v. Davis,* 528 A.2d 1267, 1270 (Me.1987).

[¶ 6] During the trial, the court permitted some questioning of Brown and testimony by McMahan regarding some history of the adversarial relationships between McMahan and Brown and other fishermen who worked the waters around Criehaven. The court excluded questions to Brown that asked when he had hired an attorney and who his attorney was, but allowed McMahan to testify that after the incident Brown had threatened to sue McMahan and that Brown wanted McMahan's fishing rights in the Criehaven waters.

[¶ 7] At one point during the trial, when defense counsel was questioning Brown about problems that other fishermen were having with McMahan and mentioned a 1992 occurrence, the court *sua sponte* ruled the line of questioning irrelevant. After a brief recess defense counsel attempted to address "the reason why we object to the court's ruling." The court responded: "I'm not interested in hearing argument. I've made my ruling [defense counsel]. We'll proceed. Your rights are protected. You had an opportunity to make [a] statement on the record." Defense counsel responded: "May I make a statement and give the court memoranda of law?" The court responded: "Not at this time. But I don't know what it's about. I made a ruling with respect to evidence, and I adhere to that ruling. You

2. Section 208 is as follows:

### § 208. Aggravated assault

1. A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:

A. Serious bodily injury to another; or

B. Bodily injury to another with use of a dangerous weapon; or

C. Bodily injury to another under circumstances manifesting extreme indifference to the value of human life. Such circumstances include, but are not limited to, the number, location or nature of the injuries, the manner or method inflicted, or the observable physical condition of the victim.

2. Aggravated assault is a Class B crime. 17-A M.R.S.A. § 208 (1983).

The docket entries erroneously state that McMahan was originally charged with assault (Class D), 17-A M.R.S.A. § 207. It may be that the docket entries were adjusted after the fact as a result of a computer programming error which may have altered the original docket entry indicating aggravated assault when, after trial, McMahan was convicted of the lesser included offense of simple assault. However, there is absolutely no dispute that the original indictment charged aggravated assault (Class B) and we will presume that the

clerk's office properly entered this charge into the docket in the initial processing of the case.

3. Section 108(1) is as follows:

1. A person is justified in using a reasonable degree of nondeadly force upon another person in order to defend himself or a 3rd person from what he reasonably believes to be the imminent use of unlawful, nondeadly force by such other person, and he may use a degree of such force which he reasonably believes to be necessary for such purpose. However, such force is not justifiable if:

A. With a purpose to cause physical harm to another person, he provoked the use of unlawful, nondeadly force by such other person; or

B. He was the initial aggressor, unless after such aggression he withdraws from the encounter and effectively communicates to such other person his intent to do so, but the latter notwithstanding continues the use or threat of unlawful, nondeadly force; or

C. The force involved was the product of a combat by agreement not authorized by law.

17-A M.R.S.A. § 108(1)(A)-(C) (1983).

had an opportunity to put things on the record."

[¶ 8] Defense counsel then persisted in trying to get the court to consider the memoranda of law that apparently had been prepared. The court declined to consider the memoranda, and it does not appear that the court afforded defense counsel the referenced "opportunity to make a statement on the record," other than the offer of proof discussed below.

[¶ 9] Shortly thereafter, defense counsel asked Brown about a 1993 incident. The State objected. The court sustained the objection. Defense counsel then asked: "May I make an offer of proof?" The court responded: "Yes. You can do it during the luncheon recess."

[¶ 10] After approximately three-quarters of an hour of additional testimony, mostly by a doctor who was called out of order, the court took a noon recess and left the courtroom. Defense counsel then made their offer of proof without the court present.

[¶ 11] Review of the record of the offer of proof indicates that certainly some of the materials in the offer were irrelevant. However, other materials in the offer of proof suggested an ongoing practice by Brown and other fishermen to harass and drive out fishermen, such as McMahan, who would not comply with rules Brown and his associates attempted to impose. The defense argued that evidence of prior practices and threats by a group of fishermen, including Brown, was relevant to the issue of the reasonableness of McMahan's actions and of his beliefs as to what might occur when Brown came onto his wharf. The defense also urged, again without the court present, that this history of prior incidents was relevant to the question of McMahan's knowledge of Brown's reputation or propensity for violence. *See State v. Stanley*, 2000 ME 22, ¶¶ 8–15, 745 A.2d 981, 984–85; *State v. Leone*, 581 A.2d 394,

400 n. 4 (Me.1990); *State v. Dutremble*, 392 A.2d 42, 46–47 (Me.1978).

[¶ 12] After the noon recess, the trial continued with testimony by another doctor. At the close of the State's case, the court ruled that the State had not proven beyond a reasonable doubt the aggravated elements of the assault charge, 17–A M.R.S.A. § 208, leaving only the question of the misdemeanor assault, 17–A M.R.S.A. § 207, to be decided. McMahan then testified and was permitted to testify to some of the history of problems with Brown and other fishermen that had been excluded in examination of the State's witnesses. After completion of the evidence and argument of counsel, the court convicted McMahan of assault. McMahan then brought this appeal.

## II. DISCUSSION

■ [¶ 13] As his first argument on appeal, McMahan urges that the court did not properly evaluate the evidence and that there is insufficient evidence to disprove McMahan's self-defense justification beyond a reasonable doubt. While the evidence included sharply differing versions of the events and of how the assault incident was initiated, resolution of such differences is a matter for the trial court. On review, we must consider the evidence, and any reasonable inferences that may be drawn from the evidence, most favorably to the result reached by the trial court. *See State v. Roussel*, 2000 ME 185, ¶ 8, 760 A.2d 1062; *State v. Wilder*, 2000 ME 32, ¶ 46, 748 A.2d 444, 455–56. Reviewed by that standard, there is sufficient evidence to support the assault conviction.

■ [¶ 14] The other issue addressed on appeal is McMahan's challenge to the court's permitting him to make an offer of proof, but not being present when the offer of proof was made. Offers of proof are addressed in M.R. Evid. 103(a)(2) & (b).[4] An offer of proof may be made in a variety of ways: from a brief statement by

---

4. Maine Rules of Evidence 103 states:
   **RULE 103.  RULINGS ON EVIDENCE**

(a) **Effect of Erroneous Ruling.** Error may not be predicated upon a ruling which

counsel of the essence of the disputed evidence, to a longer narrative, to providing the court documents outlining the evidence at issue, to testimony. *See* Field & Murray, *Maine Evidence* § 103.4 (2000 ed.). The nature and scope of an offer of proof are matters committed to the sound discretion of the trial court.

[¶ 15] One purpose of an offer of proof is to apprise the court of the nature of the challenged evidence before it finally rules on the issue. *See MacCormick v. MacCormick,* 478 A.2d 678, 680 (Me.1984); *State v. Williams,* 462 A.2d 491, 492 (Me. 1983). While offers of proof need not be allowed in each instance if the nature of the evidence is apparent from the question or the context of the trial, offers of proof when made are directed to the court to increase the court's understanding of the issue. The rule necessarily assumes the presence and attention of the court.[5] Thus, in *MacCormick,* we held that a trial judge erred in a bench trial by not permitting an offer of proof to be presented to the court. *MacCormick,* 478 A.2d at 681–83. There we stated that:

> The trial judge's remarks suggest that he believed it improper for a judge sitting as factfinder to hear, through an offer of proof, evidence that he had already ruled to be inadmissible; that the impartiality of his factfinding would thereby be put at risk. Under our system of nonjury trials, however, the judge's receipt of offers of proof is not only proper, but absolutely necessary if he is to carry out his full judicial responsibilities.

*Id.* at 682.

[¶ 16] In *Walter v. Wal–Mart Stores, Inc.,* 2000 ME 63, ¶ 38, 748 A.2d 961, 974, decided after the trial in this case, we criticized a practice of directing counsel to make a record on matters they wished to address to the court while the court was not present. There we noted that, on matters which are for the court to decide: "Parties must be given the opportunity to make their arguments to the court." *Id.* In *Walter,* we found no prejudice from the court's practice, as the record to be made related to legal issues incident to a jury instruction. *Id.*

[¶ 17] Here, such a no prejudice determination is not possible. Some of the evidence addressed in the offer of proof was relevant to McMahan's self–defense justification, which was the central contested issue in the trial. Trial courts are given considerable discretion to determine issues of admissibility under M.R. Evid. 104 and to determine whether evidence would be more prejudicial than probative or would be unduly repetitive under M.R. Evid. 403. *See State v. Stoddard,* 1997 ME 114, ¶ 12, 696 A.2d 423, 427; *State v. Ledger,* 444 A.2d 404, 415–16 (Me.1982). Had the court considered the matters presented in McMahan's offer of proof and then excluded the evidence, it is possible that on deferential review of the whole record, we could have determined that the ruling either was not error or was harmless error. *See State v. Witham,* 1997 ME 77, ¶ 10, 692 A.2d 930, 934. However, here the court refused to allow defense counsel to make any statement in its presence regarding the substance of the proffered evidence, and the court was not present for the offer of proof. Thus, the court did

admits or excludes evidence unless a substantial right of the party is affected, and
. . . .
> (2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
> (b) **Record of Offer and Ruling.** The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made and the ruling thereon. It may direct the making of an offer in question and answer form.

M.R. Evid. 103(a)(2), (b).

**5.** A written offer of proof may, of course, be reviewed by the court in chambers or recess. Here the court refused to receive and consider McMahan's written offer of proof.

not apply any independent judicial judgment to the proffered evidence such as would entitle the court's exclusion of the evidence to deferential review. *Compare Witham,* 1997 ME 77, ¶ 10, 692 A.2d at 934; *State v. Case,* 672 A.2d 586, 588 (Me. 1996).

[¶ 18] A criminal defendant is entitled to admission of relevant evidence, and the court's choice to exclude relevant evidence is significantly limited. *See State v. Cloutier,* 1997 ME 96, ¶ 5, 695 A.2d 550, 552. Because the proffered evidence was relevant to the central issue in the case and because it was excluded, we must view that exclusion as error. Further, we cannot say in the context of this case that exclusion of evidence bearing upon the reasonableness of McMahan's belief that Brown would assault him, and his knowledge of Brown's asserted reputation for violence was harmless error. Accordingly, because the court did not apply its considered, independent judicial judgment to the proffered evidence, the court's exclusion and refusal to consider relevant evidence was error which requires that we vacate the court's judgment.

[¶ 19] Because we vacate the judgment, we need not address McMahan's other challenges to evidentiary rulings.

The entry is:

Judgment vacated. Remanded for further proceedings in accordance with this opinion.