2000 ME 32

**STATE of Maine**

v.

**Lawrence WILDER.**

Supreme Judicial Court of Maine.

Argued Jan. 4, 2000.

Decided Feb. 24, 2000.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty. (orally), Stephen Dassatti, Asst. Dist. Atty, Portland, for state.

Caroline Gardner (orally), Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] This appeal requires identification of the border between a parent's justified use of physical force to control a child and a criminal assault. Lawrence Wilder ap-

peals from a decision of the Superior Court (Cumberland County, *Perkins, A.R.J.*), which affirmed a judgment of the District Court (Portland, *Bradley, J.*) finding him guilty of three counts of assault, 17–A M.R.S.A. § 207(1) (1983) (Class D), on his nine-year-old son.[1] Wilder contends that the District Court: (1) misapplied 17–A M.R.S.A. § 106(1) (1983) to disregard the parental control justification for his acts; (2) erred in admitting hearsay testimony by a police officer as a prior consistent statement; (3) improperly admitted and considered testimony regarding his prior gross sexual assault conviction; and (4) imposed a sentence greatly disparate from the prosecutor's pretrial plea offer. Because the evidence in this case is insufficient to support the convictions beyond a reasonable doubt when 17–A M.R.S.A. § 106(1) is properly applied, we vacate the convictions and remand for entry of a judgment of acquittal.

## I. BACKGROUND

[¶ 2] At the time of trial, Lawrence Wilder and Bernice Landry had been divorced for eight years. They have a daughter and a son from their three-year marriage. Pursuant to the divorce, Wilder had responsibility for his son on many weekends and during some school vacations, a pattern that had continued for about a year. The events at issue in this case arose during the April 1998 school vacation when the son, then nine years old, stayed with his father for a week. Previous times when the father and son were together had apparently gone without significant incident.

[¶ 3] The son was the only witness to the events who testified at trial. His testimony, regarding each of the three incidents, was as follows:

1.  17–A M.R.S.A. § 207(1) reads as follows:
    **§ 207. Assault.**
    1. *A person is guilty of assault if he intentionally, knowingly, or recklessly causes*

### A. First Charge

[¶ 4] Regarding the first assault charge, the son testified: "We were playing a little board game and I was talking too much, so he turned around and grabbed me on the shoulder and told me to shut up." The incident was then described, in the boy's testimony, as follows:

Q.  Now, you said that he told you to shut up. What were you saying?
A.  I was talking too much.
Q.  Do you talk a lot?
A.  Yes.
Q.  Does that annoy people sometimes?
A.  Yes.
Q.  Were you being fresh to your dad?
A.  No.
Q.  Were you saying anything bad to him?
A.  No.
Q.  Okay. And when you say he grabbed you, can you show the Judge where he grabbed you on your body?
A.  I don't remember what side it was.
Q.  What part of your body was it?
A.  My shoulder.
Q.  Did he grab you with one of his hands or both of his hands?
A.  Just one.
Q.  Okay. How did it feel when he grabbed you?
A.  He-he squeezed so it kinda hurt.
Q.  Okay. How long did he squeeze?
A.  Not for long.
Q.  Okay. What did you do when he squeezed you?
A.  I just had to sit there.
Q.  Okay. Did you cry?
A.  No.
Q.  Did you say anything to him?
A.  No.

bodily injury or offensive physical contact to another.
17–A M.R.S.A. § 207(1) (1983).

Q. How did it make you feel?

A. Angry.

Q. Mmhmm. Did you—did you show him that you were angry in any way?

A. No.

Q. Did you notice whether you had any marks on your shoulder from that?

A. I knew I may have something on there, but I didn't know for sure I would have a bruise on there.

[¶ 5] Describing this first incident in its brief, presumably in a way most favorable to its position, the State asserts that, "[The boy] was talking too much, although he was neither being fresh or saying anything bad to appellant, and appellant grabbed him on the shoulder and told him to shut up. Appellant squeezed [his son] hard enough to hurt him."

B. Second Charge

[¶ 6] The second assault charge is based on the following testimony about an event which occurred "a couple days later." The son testified: "We were still sitting in the living room, and we were playing a game again. And I was still talking too much, and he just grabbed me again. . . . [H]e grabbed me in the same shoulder."

[¶ 7] The incident was further described in the following colloquy:

Q. Okay. When he grabbed you, did he grab you with one hand or two hands?

A. One hand.

Q. Was it the same as the first time it happened?

A. Yes, it was.

Q. And it was the same spot?

A. Yes.

Q. How did it feel?

A. It made me angry and kinda sad that he had to take his aggression out on me.

Q. Okay. Did it hurt you?

A. Yes, it did.

Q. Was it—did it hurt more or less than the first time it happened?

A. It hurt a little bit more since he did it in the same spot.

[¶ 8] Asked later: "What did you do after he grabbed you?" The son responded: "We just started playing the game again."

[¶ 9] In its brief, the State describes the second assault charge as follows: "Once again, when [the boy] was talking too much, appellant grabbed him on the same shoulder. [The boy] was not mouthing off and was neither rude nor fresh. This time the pain was greater since appellant grabbed [him] in the same spot."

C. Third Charge

[¶ 10] The third assault charge was based on the following testimony:

Q. Okay. Was there another incident that happened while you were at your dad's?

A. Yes.

Q. Can you talk about that?

A. It was kinda at the last quarter of the time I spent with my dad. And we were on Martin Point Bridge, on the Portland side, and we were parked waiting for the rain to stop to go fishing. And I was talking about a movie that we saw the night before that. And he said I was over exaggerating, so he grabbed me on the—he put—grabbed me on the mouth—over my mouth and said "Shut up." And he squeezed like he usually—like he did the first two times—enough to make a bruise.

Q. Okay. How did it feel when he squeezed your mouth?

A. It made me angry, and it hurt.

Q. Can you show the Judge how he grabbed you with your own hand? Can you show where he put his hand?

A. Well, he reached over and he put his hand like that.

Q. Okay. And you said that it bru— your face bruised?

A. Yes.

Q. Where were the bruises?

A. The bruises were—there were four fingers over this side and one big thumb over there.

Q. How—when did you first notice those bruises?

A. I didn't notice those bruises. My mother pointed them out to me.

Q. After you got home?

A. Yes.

[¶ 11] Describing the third assault charge in its brief, the State asserts: "Appellant claimed that [his son] was exaggerating, then grabbed [the boy] on his mouth, squeezed and said[,] 'Shut up.'"

[¶ 12] Thus, in each of the three incidents, when Wilder "grabbed" his son, he caused transient pain and minor, temporary bruises.

[¶ 13] When the son returned home he was questioned by Bernice Landry, as was her regular practice, as to whether he had been hit by his father. She also asked him about a bruise on his face. Initially the boy gave his mother another explanation for the bruise because he was concerned that Landry would respond to the bruises by attempting to have Wilder jailed; "I thought my mom would put him in jail."

[¶ 14] Responding to her observations, Landry called the Department of Human Services, went to Westbrook Hospital, contacted the Cumberland Police, and reported the events to a school counsellor. The incident was investigated by a Cumberland police officer, who took a report from the boy. The matter was then presented to the District Attorney's Office, and prosecution on three counts of assault was initiated.

[¶ 15] The case was tried in the District Court in November 1998. At the close of the State's case, and again at the close of all of the evidence, the defense requested acquittal arguing that the justification for parents using physical force to prevent or punish misconduct by their children, 17–A M.R.S.A. § 106(1),[2] prevented conviction by proof beyond a reasonable doubt on the available evidence.

[¶ 16] In its findings at the close of trial, the court concluded that the elements of assault—intentionally, knowingly, or recklessly causing bodily injury—had been proven beyond a reasonable doubt for each of the three incidents. The court also ruled that the parental control justification "does not apply here." The court determined that:

There is no evidence of misconduct in this record, or a reasonable inference that could be drawn from the evidence in this record as to misconduct. I don't find that excessive talking and exaggerating, in and of themselves, without some further evidence, would rise in any way to a level of misconduct as it's plainly defined.

[¶ 17] The court found Wilder guilty on each charge. He was sentenced on one charge to 364 days in the county jail with all but 90 days suspended and a year's probation. On the other two charges he was given a consecutive sentence of 364 days, all suspended and a year's probation, for a total sentence of 728 days, all but 90 days suspended and 2 years probation.[3]

---

**2.** 17–A M.R.S.A. § 106(1) states:

§ 106. Physical force by persons with special responsibilities

1. A parent, foster parent, guardian or other similar person responsible for the long term general care and welfare of a person is justified in using a reasonable degree of force against such person when and to the extent that he reasonably believes it necessary to prevent or punish such person's misconduct. A person to whom such parent, foster parent, guardian or other responsible person has expressly delegated permission to so prevent or punish misconduct is similarly justified in using a reasonable degree of force.

17–A M.R.S.A. § 106(1) (1983).

**3.** This consecutive sentence consists of two maximum 364-day sentences for Class D

One of the conditions of probation, also a bail condition, was that Wilder have no contact with his son. The record indicates that the sentence was motivated, in part, by the court's concern that Wilder had been convicted of gross sexual assault against a daughter a number of years in the past.

[¶ 18] This appeal followed Wilder's unsuccessful appeal to the Superior Court.

## II. PARENTAL CONTROL JUSTIFICATION

■ [¶ 19] Where the Superior Court acts as an intermediate appellate court, we review directly the judgment of the District Court. *See Barclay v. Eckert*, 2000 ME 10, ¶ 8, 743 A.2d 1259; *Johnson v. Smith*, 1999 ME 168, ¶ 5, 740 A.2d 579, 581.

■ [¶ 20] A parent has a fundamental liberty interest in maintaining a familial relationship with his or her child. *See Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 103–04 (2d Cir.1999); *In re Alexander D.*, 1998 ME 207, ¶ 14, 716 A.2d 222, 226–27; *In re Randy Scott B.*, 511 A.2d 450, 452 (Me. 1986). This fundamental liberty interest includes the right of parents "to direct the upbringing and education of children," [4] including the use of reasonable or moderate physical force to control behavior.[5] "The parent may be subject to the criminal law when his punishment of the child exceeds the bounds of reason and moderation." *State v. Coombs*, 381 A.2d 288, 289 (Me.1978), (addressing the status of the law before the effective date of the Criminal Code, but citing 17–A M.R.S.A. § 106 in support of the statement of the law). A parental privilege to use moderate or reasonable physical force, without criminal liability, was recognized at common law: "battery is, in some cases, justifiable or lawful; as where one who hath authority, a parent or a master, gives moderate correction to his child, his scholar, or his apprentice." [6]

crimes. See 17–A M.R.S.A. §§ 1252(2)(D) & 1256(2)–(3) (1983 & Supp.1999).

4. *Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 534–35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); see also *Meyer v. Nebraska*, 262 U.S. 390, 399–400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

5. Although a parent has a privilege to use reasonable or moderate physical force to control behavior, there is no absolute constitutional right to strike a child. *See Sweaney v. Ada County*, 119 F.3d 1385 (9th Cir.1997). The United States Supreme Court does not appear to have directly addressed a parental privilege to physically control a child in a child assault case, but in a civil case it has recognized a similar privilege of a school official to use physical force to control a child in a school setting where "was subjected to more than 20 licks with a paddle while being held over a table in the principal's office." *Ingraham v. Wright*, 430 U.S. 651, 656, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

6. WILLIAM BLACKSTONE, BLACKSTONE'S COMMENTARIES ON THE LAWS OF ENGLAND 120 (1768); see also WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 440 (Oxford Reprint 1966) (stating that a parent "may lawfully correct his child, being under age, in a reasonable manner. For this is for the benefit of his education."); see also Kandice K. Johnson, *Crime or Punishment: The Parental Corporal Punishment Defense—Reasonable and Necessary, or Excused Abuse?*, 1998 U. ILL. L.REV. 413, 435 & n.123.

The current status of English Common Law with standards apparently similar to section 106(1) is addressed in a European Court of Human Rights matter, *Case of A. v. The United Kingdom* (1001 1997/884/1096, Strasborg 23 Sept. 1998), which ruled that the standards of the English Common Law contravened the European Convention on Human Rights. That convention, applied to the United Kingdom, was viewed as effectively prohibiting approval of parental corporal punishment. *See European Court Ruling Bans Corporal Punishment of UK Children.* See THE GUARDIAN (Sept. 23, 1998).

The European Court case had its genesis in an English jury's acquittal of a stepfather who had been charged with assault after repeatedly striking a nine-year-old boy with a "garden cane" leaving approximately 10 "linear bruises" from "fresh" to a week old. *Case of A.* at ¶ 9. The stepfather asserted a parental disci-

[¶ 21] Today a parent's privilege to exercise physical control over a child is recognized by Maine law in 17–A M.R.S.A. § 106(1). The 1975 comment to section 106, which accompanied the adoption of the Criminal Code, notes that section 106(1) is based on the former crime of "cruelty to children,"[7] which prohibited a parent, guardian, or other custodian from "cruelly treat[ing]" or inflicting "extreme punishment" on a child. *See* 17–A M.R.S.A. § 106 cmt. (1975). The comment states that section 106(1), "would appear to be the same rule as is implied in the statutory prohibition against extreme punishment." *See id.*

[¶ 22] Since adoption of the Criminal Code, we have only had one occasion to address the parental discipline justification, and the facts in that case were not close. In *State v. Dodd*, 503 A.2d 1302 (Me.1986), we affirmed a conviction where a defendant spanked a three-year-old child to stop her from crying, taped her ankles and hands together, taped her mouth shut and hung her from a door knob by her ankles on two occasions for a total of over twenty minutes. *See id.* at 1303–04. We addressed the parental control justification in a footnote stating that: "[t]he trial justice had ample grounds to conclude that the defendant's conduct went far beyond being a 'reasonable degree of force' to discipline." *Id.* at 1304 n. 2.

[¶ 23] With this background, we must analyze the District Court's determination that the parental control justifica-

tion "does not apply here." In determining whether facts at trial put a statutory justification at issue, the trial court must consider the evidence in the light most favorable to the defendant. *See State v. Collin*, 1999 ME 187, ¶ 11, 741 A.2d 1074; *State v. Sullivan*, 1997 ME 71, ¶ 6, 695 A.2d 115, 117; *State v. O'Brien*, 434 A.2d 9, 13 (Me.1981). The source of the evidence makes no difference, either side may introduce evidence which generates a justification. *See State v. Begin*, 652 A.2d 102, 106 (Me.1995). Thus, although Wilder did not testify, his son's testimony could put sufficient facts in evidence to place the section 106(1) justification at issue in the trial.

[¶ 24] The evidence here is that the triggers for Wilder's exercise of parental control were talking too much or exaggerating. Taking this evidence most favorably to the parent, as we must, talking too much which can "annoy people sometimes" is a justifiable basis for a parent's exercising control over a child to prevent or punish misconduct.[8] Likewise, exaggerating, which may be construed as misstating or lying, is a justifiable basis for a parent's exercising control to prevent or punish misconduct. Certainly we cannot rule, as a matter of law, that talking too much or exaggerating is not a basis for disciplining or controlling a child. But that is a ruling we would have to make to uphold the District Court's determination. The record contains sufficient evidence to

pline justification for his admitted acts. The judge charged the jury as follows:

What is it the prosecution must prove? If a man deliberately and unjustifiably hits another and causes some bodily injury, bruising or swelling ... he is guilty of actual bodily harm. What does unjustifiably mean in the context of this case? It is a perfectly good defence that the alleged assault was merely the correcting of a child by its parent, in this case the stepfather, provided that the correction be moderate in the manner, the instrument and the quantity of it. Or, put another way, reasonable. It is not for the defendant to prove it was lawful

correction. It is for the prosecution to prove it was not.

*Id.* at ¶ 10. The acquittal followed. The similarity of the English judge's charge to the "moderate" or "reasonable" terminology of *State v. Coombs* and section 106(1) is notable.

7. 19 M.R.S.A. § 218 (1964), *repealed by* P.L. 1995, ch. 694, § B–1 (effective Oct. 1, 1997), and now entitled "endangering the welfare of a child," 17–A M.R.S.A. § 554(1)(B–1) (Supp. 1999).

8. The boy testified that his talking a lot sometimes annoys people.

place the parental control justification at issue for each of the three assault charges.

■ [¶ 25] Once a justification is placed at issue as a result of evidence presented at trial, "the state must disprove its existence beyond a reasonable doubt." 17–A M.R.S.A. § 101(1) (Supp.1999). *See State v. Hernandez*, 1998 ME 73, ¶ 7, 708 A.2d 1022, 1025; *Sullivan*, 1997 ME 71,¶ 6, 695 A.2d at 117; *Begin*, 652 A.2d at 106.

■ [¶ 26] The charge here was assault, 17–A M.R.S.A. § 207(1), which requires proof that a defendant caused bodily injury "intentionally, knowingly, or recklessly." *See* 17–A M.R.S.A. § 207(1). Accordingly, proving beyond a reasonable doubt that the force that Wilder used and his belief that such force was necessary to control his child were unreasonable, is not enough. The Criminal Code in effect at the time of these events specified that:

> If a defense provided under this chapter is precluded solely because the requirement that the actor's belief be reasonable has not been met, he may be convicted only of a crime for which recklessness or criminal negligence suffices, depending on whether his holding the belief was reckless or criminally negligent.

17–A M.R.S.A. § 101(3) (1983), *amended by* P.L.1999, ch. 358, § 1 (effective Sept. 18 1999). Thus, to sustain a conviction for assault where the parental control justification is generated, the State had to prove, at a minimum, that (1) the force Wilder used was reckless; and (2) Wilder's belief that such force was necessary to control his son and prevent misconduct was reck-

less.[9] *See Sullivan*, 1997 ME 71, ¶ 9, 695 A.2d at 118–19; *State v. Davis*, 528 A.2d 1267, 1269–70 (Me.1987); *State v. Smith*, 472 A.2d 948, 951 (Me.1984).

[¶ 27] In 1999, by legislation not applicable to this case, section 101(3) was amended to clarify the law by placing into the law the definitional prerequisites for conviction that had previously been incorporated by reference from the definition of recklessness. *See* 17–A M.R.S.A. § 103(3) (Supp.1999). The law now specifies that, where recklessness is an element of a crime, as it is here, and the reasonableness of one's belief is at issue due to a justification defense, a person may be convicted "only if holding the belief, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to the person, is grossly deviant from what a reasonable and prudent person would believe in the same situation." *Id.* This clarifying language essentially incorporates existing law on the recklessness standard. *Cf. Sullivan*, 1997 ME 71, ¶ 9, 695 A.2d at 118–19; *Smith*, 472 A.2d at 951; *Maine Jury Instruction Manual*, § 6–56 (1999).

■ [¶ 28] Accordingly, the District Court erred in (i) refusing to consider the parental control justification; and (ii) not requiring the State to prove beyond a reasonable doubt that the force Wilder used was reckless and that his belief that such force was necessary for parental control was reckless or "grossly deviant from what a reasonable and prudent person would believe in the same situation."

---

9. "Recklessly" is defined by 17–A M.R.S.A. § 35(3) as follows:

> **§ 35. Definition of culpable states of mind.**
>
> . . . .
>
> 3. "Recklessly."
>
> A. A person acts recklessly with respect to a result of his conduct when he consciously disregards a risk that his conduct will cause such a result.
>
> B. A person acts recklessly with respect to attendant circumstances when he con-

sciously disregards a risk that such circumstances exist.

> C. For purposes of this subsection, the disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

17–A M.R.S.A. § 35(3) (1983).

[¶ 29] At this point we must determine whether to proceed to address the evidentiary issues raised on the appeal and remand for additional findings or a new trial or remand for a judgment of acquittal if, as a matter of law, the evidence presented was insufficient to support the convictions.

## III. SUFFICIENCY OF THE EVIDENCE

[¶ 30] Determination of whether the State's evidence in this case is sufficient to disprove the parental control justification beyond a reasonable doubt necessarily requires some articulation of what conduct may be justified under section 106(1). In seeking to articulate the standards that the evidence must meet, we begin with the basic principle of statutory construction that criminal statutes must be construed strictly with ambiguities resolved in favor of the accused. *See United States v. Bowen*, 127 F.3d 9, 12 (1st Cir. 1997); *State v. Ashby*, 1999 ME 188, ¶ 6, 743 A.2d 1254.

[¶ 31] The criminal liability threshold set out in section 106(1), "reasonable degree of force" that the actor "reasonably believes is necessary to prevent or punish such person's misconduct," is derived from the common law and is shared by at least five other states.[10]

[¶ 32] By way of comparison, the Model Penal Code expressly rejects the "reasonableness" and "necessity" approach, stating that use of physical force by a parent to control a child is justifiable if:

(a) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of his [or her] misconduct, and (b) the force used is not designed to cause or known to create a substantial

risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation. . . .

MODEL PENAL CODE § 3.08(1) (1979).

The comment to the Model Penal Code supports this differing approach, stating:

The formulation also differs from the Restatement [of Torts] in not explicitly demanding that the force be reasonable. It was believed that so long as a parent uses moderate force for permissible purposes, the criminal law should not provide for review of the reasonableness of the parent's judgment. Of course, even if a statute includes language about necessity or reasonableness or both, it would be extraordinary for a parent using moderate force for a permissible purpose to be prosecuted because of misjudgment. Thus the less stringent language of the Model Code is unlikely to make a great practical difference, but it does more accurately reflect the latitude that is actually given to judgments of parents in disciplining their children.

MODEL PENAL CODE § 3.08, cmt. (1979).

[¶ 33] The reliance of section 106(1) on the reasonableness standard governing both an actor's beliefs and his or her actions is clarified by rules of interpretation that add sufficient specificity to the meaning of section 106(1) to give fair notice of the standards to which parents will be subject should they elect to use physical means to control their children.

[¶ 34] As already noted, 17-A M.R.S.A. § 101(3) effectively modifies the reasonableness standard to impose a higher and more specific recklessness requirement in cases where the underlying charge is assault. Thus, the issue becomes not whether the parent's action in physically

---

10. The 1975 comment to section 106 indicates it was based in part on section 27:6 of the New Hampshire Criminal Code. *See* 17-A M.R.S.A. § 106 cmt. Alabama, Colorado, Connecticut, and Oregon have similar justification laws. *See* Johnson: *Crime or Punishment*, 1998 U. ILL. L.REV. at 442 n.164. *See*

*also* section 147 of the Restatement of Torts which indicates there is a justification for a parent using "such reasonable force [and] confinement as [the parent] reasonably believes to be necessary for . . . proper control, training, or education" of a child. RESTATEMENT (SECOND) OF TORTS § 147 (1965).

controlling the child was unreasonable, but instead whether that parent's action or belief was grossly deviant from what a reasonable and prudent parent would do or believe in the same situation. *See* 17–A M.R.S.A. § 35(3). "Gross deviation" is a considerable narrowing of the reasonableness standard and one that has been approved as preserving a recklessness or criminal negligence standard for conviction against a due process challenge. *See State v. Carisio*, 552 A.2d 23, 25 (Me. 1988).

[¶ 35] There is also a basis in law to set a threshold for the type of physical control of children by parents that will not result in criminal conviction absent special aggravating circumstances. In *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1997), the United States Supreme Court recognized a school official's civil privilege to physically discipline a child with "licks" or blows with a paddle which resulted in "no apparent physical injury to the student." *Id.* at 657, 97 S.Ct. 1401. The Supreme Court must have recognized that any time a child is hit with a physical object, or a hand, with the intent of disciplining the child, the hit is intended to cause some transient pain, and it may leave a red mark or a bruise which, depending on the child's skin sensitivity, may last a few hours or a few days. But it may be that such contacts that cause only transient pain and temporary marks, in the parent–child or school disciplinary context, were not considered by the Court to constitute "physical injury."

[¶ 36] Cases from other states that have addressed close questions of sufficiency of the evidence in parental justification-assault cases lend support to a distinction between those acts that cause only transient pain and temporary marks or bruises, which the parental justification protects, and those acts that cause long-term pain, permanent marks, or disfigurement upon which criminal liability is assessed.

[¶ 37] In *State v. Kaimimoku*, 841 P.2d 1076 (Haw.App.1992), evidence indicated that a 17–year–old girl, in a heated argument with her father, was held, slapped in the face and punched on her shoulders with a closed fist. A day later a hand print, other bruising, and a scratch mark was observed on her body. The Hawaii Appeals Court overturned the trial court's family abuse conviction, ruling as a matter of law that the evidence was insufficient to support a conviction under a justification statute very similar to the Model Penal Code. The appeals court found support for its ruling in a Hawaii Supreme Court case, *State v. Deleon*, 72 Haw. 241, 813 P.2d 1382 (1991), which found insufficient evidence to support a conviction where a 14–year–old girl had been hit six to ten times with a belt causing pain and bruises that lasted about a week. *See id.* at 1383. See also *State v. Stocker*, 90 Hawai'i 85, 976 P.2d 399, 409–10 (1999) (evidence of slapping insufficient to overcome parental discipline defense and support conviction beyond a reasonable doubt).

[¶ 38] In *State v. Ivey*, 98 Ohio App.3d 249, 648 N.E.2d 519 (1994), a ten-year-old boy was disciplined for not reporting a school detention by being whipped on the buttocks and legs with a belt, leaving bruises and welts observable the next day but causing no permanent damage. The Ohio Appeals Court, Eighth District, ruled that this evidence was insufficient to support a child endangerment conviction in the face of a parental justification defense because "the harm that resulted was temporary and slight, and did not require medical attention." *Id.* at 526. Addressing the governing law and standards of review, the court stated:

> Parents are responsible for the upbringing, education and discipline of their children, as parents have a fundamental liberty interest in the care, custody and management of a child. The state should intervene only when a serious risk of physical or mental harm to the child is clear from the evidence. Parents have to be given reasonable latitude to impose discipline as the best interests of the

child dictate. Some children need more discipline than others. Some respond without ever being struck—a sharp word suffices. It is the parent who in the first instance is the best judge of what works with each child.

*Id.* (citation omitted).[11]

[¶ 39] Two cases from the Fifth District Court of Appeal of Florida illustrate distinctions that may become important at the boundary between permissible parental control and violations of criminal law. *See Lowery v. State,* 641 So.2d 489 (Fla. Dist.Ct.App.1994); *Moakley v. State,* 547 So.2d 1246 (Fla.Dist.Ct.App.1989). Both addressed a child abuse statute imposing criminal liability on one who "maliciously punishes a child." Fla. Stat. Ann. § 827.03(1)(c) (1987). *Moakley* involved a conviction for striking an eight-year-old girl on the buttocks and hip with a leather belt, leaving bruise marks. *See Moakley,* 547 So.2d at 1246. The court ruled that the evidence was insufficient to support the conviction, noting there was no evidence of great bodily harm, permanent disability, or permanent disfigurement. *See id.* at 1247. Lowery involved a conviction for striking a seven-year-old boy many times with an electric cord, leaving bruises, lesions, and scabs. *See Lowery,* 641 So.2d at 489. The court affirmed the conviction, distinguishing *Moakley* on the basis that the evidence in *Lowery* indicated that the defendant's actions had drawn blood and left some permanent marks or "disfigurement." *See id.* at 490.

[¶ 40] Another case highlighting important distinctions is *State v. Miller,* 746 So.2d 118 (La.App.1999). There both the trial court and the Louisiana Third Circuit, affirming a battery conviction, determined that defendant's slapping a child would not have been enough to support conviction, but defendant's subsequent acts of pinning the child down and choking her placed his actions beyond the "reasonable discipline" justification. *Id.* at 120. Notably, except for cases involving choking, this Court's review of the case law has not identified any case where a parent was successfully prosecuted for assault, where the parent's only physical contact with a child involved grabbing the child firmly and briefly.

[¶ 41] A recent law review article discussing parents' use of physical discipline, after surveying the law of the 50 states, argues that parental conduct that results in "physical injury" to a child should not be subject to a justification such as is provided in section 106(1). However, that article also indicates that "physical injury" as the term was addressed: "does not include transient red marks or temporary pain." Kandice K. Johnson, Crime or Punishment: The Parental Corporal Punishment Defense–Reasonable and Necessary or Excused Abuse?, 1998 U. Ill. L. Rev. 413, 472.

[¶ 42] A Washington state law addressing similar situations provides a list of actions by parents controlling their children that are considered unreasonable and subject to criminal liability. Wash. Rev.Code Ann. § 9A.16.100 (West 1999).[12]

---

**11.** But see a contrary case from the Tenth Appellate District which placed the burden of proof for the justification on the parent. *State v. Hicks,* 88 Ohio App.3d 515, 624 N.E.2d 332 (1993). *See also State v. Hauenstein,* 121 Ohio App.3d 511, 700 N.E.2d 378 (1997), a Third Appellate District case which vacated a parent's conviction arising from what appears to have been mutual combat.

**12.** The Washington statute states:
9A.16.100. Use of force on children—Policy—Actions presumed unreasonable
   It is the policy of this state to protect children from assault and abuse and to encourage parents, teachers, and their authorized agents to use methods of correction and restraint of children that are not dangerous to the children. However, the physical discipline of a child is not unlawful when it is reasonable and moderate and is inflicted by a parent, teacher, or guardian for purposes of restraining or correcting the child. Any use of force on a child by any other person is unlawful unless it is reasonable and moderate and is authorized in advance by the child's parent or guardian for purposes of restraining or correcting the child.

By this listing, Washington avoids a due process challenge to the reasonableness standard. Notably, the Washington law excludes from acts that trigger criminal liability acts that cause bodily harm no greater than "transient pain or minor temporary marks." *Id.*

[¶ 43] Under the Washington statute, assault convictions involving two children were affirmed where the evidence showed that a PVC pipe was used to hit one child as many as 35 times and another child 10 to 12 times and one parent-defendant conceded that the discipline was not reasonable and was excessive. *See State v. Gwerder*, unpublished decision, 90 Wash. App. 1055, 1998 WL 251884 (Wash.App. Div.1, 1998). This concession was held to vitiate the statute's "reasonableness" defense. *Id.* at *2.

▆▆▆▆ [¶ 44] This analysis of statutes, the common law, precedent, a scholarly survey of the law of the 50 states, and the efforts of the drafters of the Model Penal Code and the Restatement of Torts leads to the following conclusions:

1. All American jurisdictions allow parents to use at least moderate or reasonable physical force when they reasonably believe that such force is necessary to control their children;

2. To trigger criminal liability:

(a) the physical harm caused by the parent's use of force must be greater than transient pain and minor, temporary marks or bruises; and

(b) the parent's belief that such physical contact is necessary must be more than unreasonable; it must be a gross deviation from what a reasonable and prudent parent would believe in the same situation; and

The following actions are presumed unreasonable when used to correct or restrain a child: (1) Throwing, kicking, burning, or cutting a child; (2) striking a child with a closed fist; (3) shaking a child under age three; (4) interfering with a child's breathing; (5) threatening a child with a deadly weapon; or (6) doing any other act that is likely to cause and which does cause bodily

3. Once a parental control justification is placed in issue, the triggers for criminal liability must be proven by the State, beyond a reasonable doubt.

▆▆▆ [¶ 45] Section 106(1) must be interpreted with this background. The combination of (1) Maine's own interaction of statutory definitions within the Criminal Code; and (2) accepted interpretations of the type of force that a parent may use against a child without being viewed as criminal, gives sufficient specificity to the interplay of the assault statute and the parental control justification to articulate the prohibited criminal conduct. To present sufficient evidence to allow a factfinder to determine that the State has disproven the section 106(1) justification, the State must prove beyond a reasonable doubt that: (1) the degree of physical force that the parent used caused physical injury greater than transient pain and/or temporary red marks or bruises; and (2) the parent's belief that such physical force was necessary to control the child's misconduct was grossly deviant from what a reasonable and prudent parent would believe necessary in the same situation.

▆▆▆ [¶ 46] The evidence in this record must be examined against the above criteria. When reviewing the sufficiency of the evidence to support a conviction, we review it in the light most favorable to the State to determine if the factfinder rationally could find beyond a reasonable doubt every element of the offense charged. *See State v. Brown*, 2000 ME 25, ¶ 7, —— A.2d ——, 2000 WL 146799; *State v. Michaud*, 1998 ME 251, ¶ 11, 724 A.2d 1222, 1228; *State v. John W.*, 418 A.2d 1097, 1103 (Me.1980). We will reverse a conviction

harm greater than transient pain or minor temporary marks. The age, size, and condition of the child and the location of the injury shall be considered when determining whether the bodily harm is reasonable or moderate. This list is illustrative of unreasonable actions and is not intended to be exclusive. WASH. REV.CODE. ANN. § 9A.16.100 (West 1999).

only when no trier of fact rationally could find proof of guilt beyond a reasonable doubt. *See Brown*, 2000 ME 25, — A.2d at —; *State v. Durgan*, 467 A.2d 165, 166 (Me.1983). For this determination, it is appropriate to accept the State's characterization of the evidence. We also recognize and accept that the District Court could find, as it did, that the technical elements of assault were proven. The concern here is not with those findings but with the application of the parental control justification.

■ [¶ 47] In the first assault incident in which the boy was "talking too much," the State characterizes Wilder as having "grabbed him on the shoulder and told him to shut up" and having squeezed the boy "hard enough to hurt him." If such acts, as characterized by the State, and with no apparent evidence of any aggravating factors, are sufficient to support an assault charge, then any physical contact by a parent with a child that hurts the child may support an assault conviction if the State elects to prosecute. But while neither the State nor this Court may necessarily condone or agree with Wilder's approach to control of his son, we can say, as a matter of law, that (1) the physical harm caused was not, beyond a reasonable doubt, greater than transient pain and temporary marks; and (2) grabbing his son hard to get his attention and stop him from talking too much was not, beyond a reasonable doubt, an action grossly deviant from what a reasonable and prudent parent would believe necessary in the same situation.

[¶ 48] The same may be said of the second incident involving grabbing the shoulder in the same spot and for the same reason. In neither case was the child squeezed firmly enough to make him cry, and in both cases, father and son apparently continued the games they had been playing before the incidents.

[¶ 49] The third incident involving "exaggerating" resulted in Wilder grabbing his son on the mouth, squeezing firmly enough to leave bruises, and saying "shut up."

Again, while this is not an action to control or reprimand a child that the State or this Court might take or condone, we can say as a matter of law that the evidence is insufficient to support a finding, beyond a reasonable doubt, that (1) Wilder's beliefs that he needed to use force to control his son were grossly deviant from what a reasonable and prudent parent would believe necessary in the same situation; and (2) the force used caused harm greater than transient pain and temporary marks.

[¶ 50]. At oral argument, the State asserted that even in the face of 17–A M.R.S.A. § 106(1), any physical action by a parent to control a child which causes the child pain and which is brought to the State's attention, may subject the parent to criminal prosecution for assault, depending upon how the State exercises its prosecutorial discretion. This standard gives the State considerable latitude to inject itself, supporting one side or the other, into difficult and often ambiguous family situations. The State's position ignores the limitation on the State's discretion suggested in the Model Penal Code comments that even, under a statute like section 106(1), "it would be extraordinary for a parent using moderate force for a permissible purpose to be prosecuted because of misjudgment." MODEL PENAL CODE § 3.08 cmt. (1979).

[¶ 51] Certainly, the State should and does frequently inject itself into family situations to protect children from assaults and other abuse. *See, e.g., In re Kafia M.*, 1999 ME 195, 742 A.2d 919. But the standards for such involvement must respect the standards specified in section 106(1). The law puts a heavy burden on the State to inject itself into parent-child control situations by bringing criminal charges only when the actions of the parent cause more than transient pain or temporary marks and the beliefs of the parent that the parent must act to cause the child pain are grossly deviant from what a reasonable and prudent parent would believe necessary in the same situation. While

there are individuals who legitimately and firmly believe that any discipline which causes a child physical pain is inappropriate,[13] any change in the parental control justification presently set by the Maine Criminal Code is an issue of policy properly subject to action by the Legislature, not the courts.

[¶ 52] Maine's present Criminal Code sets a standard, noted in the 1975 Commentary to the Code, that proscribes physical discipline of a child only for "extreme punishment" or an action which "cruelly treats" a child. Because the parental control justification was generated by the evidence, the limited evidence in this record is insufficient for any rational factfinder to find the parental control justification disproven beyond a reasonable doubt.

The entry is:

Judgment vacated. Remanded to the Superior Court for remand to the District Court for entry of a judgment of acquittal on each charge of assault.

**13.** Many people believe that parents should not use physical force to control their children. At least nine countries ban corporal punishment of children: Austria, Croatia, Cyprus, Denmark, Finland, Italy, Latvia, Norway, and Sweden. *See European Court Ruling Bans Corporal Punishment of UK Children,* THE GUARDIAN, Sept. 23, 1998. However, in the United States, "greater than ninety percent of American parents use physical force to punish their children." Johnson, *Crime and Punishment,* 1998 U. ILL. L.REV. at 420, 428–29 (citing Straus, *Discipline and Deviance: Physical Punishment of Children and Violence and other Crime in Adulthood,* 38 SOC. PROB. 133, 136 (1991) and Graziano, *Physical Punishment in Childhood and Current Attitudes: An Exploratory Comparison of College Students in the United States and India,* 7 J. INTERPERSONAL VIOLENCE 147, 149 (1992)).