2001 ME 30

**STATE of Maine**

v.

**David YORK.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 21, 2000.
Decided: Feb. 9, 2001.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty., Portland, for State.

Patrick H. Gordon, Esq., Strike & Gordon, Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] David York appeals from the judgment entered in the Superior Court (Cumberland County, *Crowley, J.*) pursuant to a jury verdict finding him guilty of assault, 17–A M.R.S.A. § 207(1) (1983) (Class D), for injuries inflicted on his nine-year-old daughter. On appeal, York contends that the trial court erred (1) in denying his motion for a judgment of acquittal; (2) in denying his motion for a new trial; and (3) in sentencing him to nine months in jail. We affirm the judgment and dismiss the sentence appeal.

## I. BACKGROUND

[¶ 2] The evidence at trial, taken in the light most favorable to the State as to whether an assault occurred, revealed the following. In the spring of 1999, Kelly, then nine years old, and her brother and sister were living with their father, David York.[1] York had told Kelly in the past not to open more than three drawers on her dresser at a time because they made noise. Early one Saturday morning, Kelly awakened her father by opening the drawers. York came to Kelly's room, spanked her, and hit her on her back. He then threw her onto her bed where Kelly's head hit the wall, causing a bruise on the side of her head. After hitting her head, Kelly cried and stayed alone in her room for a couple of hours.

[¶ 3] On the following Monday, a school guidance counselor noticed a one-inch, oval-shaped, green bruise on the side of Kelly's head and spoke to Kelly about the origin of the bruise. Based on Kelly's response, the guidance counselor reported it to the Department of Human Services.[2]

[¶ 4] David York testified at trial. He told the jury that he did in fact reprimand his children on some occasions by spanking them, and that during the course of playing with his children, he would sometimes throw them onto his waterbed. He denied, however, that the bruise in question was caused by him throwing his daughter

---

1. York received custody of his three children pursuant to a court order that followed an investigation by the Department of Human Services regarding the safety of the children in York's home and the home of his ex-wife. By the time of trial, Kelly York was ten years old.

2. Kelly also testified that the school nurse noticed a bump on the side of her head.

onto her bed. York testified that Kelly's bruise was the result of her playing with the trapeze in the backyard.[3] Alternatively, he asserted that Kelly was with his parents on what he referred to as the "so-called night and morning in question."

[¶ 5] At the close of the State's evidence, York made a motion for a judgment of acquittal based largely on the parental discipline justification, 17–A M.R.S.A. § 106(1) (1983). *See also State v. Wilder*, 2000 ME 32, 748 A.2d 444. The court denied the motion. At the close of all of the evidence, York renewed his motion for a judgment of acquittal. The court denied the motion but granted York's request that the jury be instructed on his parental discipline defense, notwithstanding York's assertions under oath that he had had no occasion to discipline Kelly because the event did not happen. After deliberation, the jury found York guilty of assault, thereby implicitly rejecting his defense of parental discipline justification.

[¶ 6] Prior to sentencing, York renewed his motion for a judgment of acquittal and moved for a new trial based on the grounds that he had been unfairly prejudiced when the complaint was read to the jury at the opening of the trial. The complaint contained an allegation that York struck Kelly in the temple with a closed fist, a fact which was never presented at trial. The court denied those motions. After hearing arguments, the court sentenced York to nine months in the Cumberland County jail.[4] York filed this appeal of the judgment and the sentence.

## II. DISCUSSION

### A. Motion for a Judgment of Acquittal

■ [¶ 7] When reviewing the sufficiency of the evidence to support a conviction, we review the evidence in the light most favorable to the State to determine whether the jury rationally could find beyond a reasonable doubt every element of the offense charged. *State v. Brown*, 2000 ME 25, ¶ 7, 757 A.2d 768, 770–71. There is no question that the record contains ample evidence satisfying the elements of the charge of assault, and York does not challenge the sufficiency of the evidence in support of the elements of assault. *See Wilder*, 2000 ME 32, ¶ 46, 748 A.2d at 456.

[¶ 8] Instead, York challenges the court's failure to conclude that York's actions fell, as a matter of law, within the parental discipline privilege set out in 17–A M.R.S.A. § 106(1), because his actions were necessary to prevent or punish Kelly's misconduct. In other words, York claims that even though the jury was entitled to find that he caused Kelly offensive physical contact,[5] the State failed to present sufficient evidence to disprove his parental discipline defense beyond a reasonable doubt.

■ [¶ 9] We first determine whether York presented sufficient evidence to raise the parental discipline justification. In determining whether the facts were sufficient to raise the defense, we review the evidence in the light most favorable to the parent. *Id.* ¶ 23, 748 A.2d at 450. It does not matter whether the evidence was presented by the State or the defendant. *See State v. Begin*, 652 A.2d 102, 106 (Me.

---

3. York testified that although he did not see the trapeze hit Kelly, the bruise was definitely caused by the trapeze. York stated, "My daughter comes crying in the house, tells me she got hit by something, I have a tendency to believe her." At trial, Kelly testified that she did not get the bruise from a swing, on the playground, from falling downstairs, or from her siblings throwing anything at her.

4. At the sentencing hearing, the court had information that York had two prior assault

convictions, one of which may have been on appeal, and a conviction for violating a protection order. The court also noted that York took no responsibility for his prior assaults or for his actions regarding Kelly and that during the trial, York appeared to be attempting to intimidate Kelly while she testified.

5. And that he did so with the requisite mens rea.

1995). Evidence from either party may be found to generate a defense. *Wilder*, 2000 ME 32, ¶ 23, 748 A.2d at 450.

■ [¶ 10] At trial, York denied that Kelly's explanation of the event had ever happened. He denied having thrown Kelly on her bed, and he disavowed any suggestion that his disciplining of Kelly caused the injury. He also asserted that he would not discipline his children by throwing them. If York's testimony were viewed in isolation, there would have been no facts giving rise to the parental discipline justification.

[¶ 11] Kelly testified, however, to more than just the assault itself. She explained that she was making noise by opening her drawers, that she had been told by her father on an earlier occasion not to make such noise, and that she understood that his actions were to discipline her for that behavior. Her testimony was sufficient to give rise to a parental discipline defense if the defendant sought to make use of it. *See id.* ¶¶ 23–24, 748 A.2d at 450–51. Thus, the court correctly gave the instruction in response to York's request.[6]

■ [¶ 12] Once the parental discipline justification is placed in issue, the State "must disprove its existence beyond a reasonable doubt." 17–A M.R.S.A § 101(1) (1983 & Supp.2000). The issue then is whether the evidence was sufficient for the jury to have determined beyond a reasonable doubt that York was not justified in throwing Kelly on the bed causing her to hit her head on the wall.

■ [¶ 13] The Legislature has provided that parents may use a reasonable amount of force in disciplining their children. 17–A M.R.S.A. § 106(1).[7] When a parent reasonably believes that force is necessary to prevent or punish a child's misconduct, the use of force that would otherwise constitute an assault may be excused. *See id.* When a parent's punishment exceeds a "reasonable degree of force," however, the statutory justification does not excuse the behavior. *See id.*

■ [¶ 14] In order for the defense to excuse the behavior, both the force used and the parent's belief in its necessity must be reasonable. *See id.* The reasonableness of the force must be measured by an objective standard. The force may be determined to be reasonable if it caused merely transient discomfort and minor temporary marks. *Wilder*, 2000 ME 32, ¶ 36, 748 A.2d at 453. The parent's belief in the necessity of the force is similarly measured by an objective standard: whether the parent's belief was grossly deviant from what a reasonable and prudent person would believe in the same circumstances. *Id.* ¶ 34, 748 A.2d at 453.

■ [¶ 15] Thus, in order to obtain a conviction in light of York's assertion of the parental control justification, the State was required to prove beyond a reasonable doubt not only that York did commit the assault, but also that: (1) the degree of physical force that York used caused physical injury greater than transient pain and/or minor temporary marks, or (2) York's belief that the force used was necessary to control Kelly's misconduct was grossly deviant from what a reasonable and prudent parent would believe neces-

---

6. York does not dispute that the Superior Court correctly applied the standards we articulated in *Wilder* when instructing the jury on the parental control justification defense, and York does not challenge the instruction.

7. 17–A M.R.S.A. § 106(1) states:
   **§ 106. Physical force by persons with special responsibilities**
   1. A parent, foster parent, guardian or other similar person responsible for the long term general care and welfare of a

person is justified in using a reasonable degree of force against such person when and to the extent that he reasonably believes it necessary to prevent or punish such person's misconduct. A person to whom such parent, foster parent, guardian or other responsible person has expressly delegated permission to so prevent or punish misconduct is similarly justified in using a reasonable degree of force.

17–A M.R.S.A. § 106(1) (1983).

sary in the same situation. *See id.* ¶ 45, 748 A.2d at 455.[8] If the State disproves either or both of those elements, the justification is not available to the defendant. *See* 17–A M.R.S.A. § 106(1).[9]

[¶ 16] Although we determine whether the parent has *raised* the parental discipline defense by examining the evidence in the light most favorable to the parent, when the jury has found the parent guilty of assault, thus rejecting the defense, we review the facts relating to the defense in the light most favorable to the State. *See Wilder,* 2000 ME 32, ¶ 46 748 A.2d at 455–56.

[¶ 17] On the first element, the evidence presented by the State was sufficient to support a finding that Kelly sustained more than transient discomfort and temporary marks. After York threw Kelly against the wall, she had a lump and a bruise on the side of her head that were visible several days later.[10] After the incident, she remained withdrawn, staying alone in her room for a couple of hours. That evidence was sufficient for the jury to have concluded that Kelly endured more than transient pain and temporary marks.

[¶ 18] We turn next to York's belief regarding the necessity of using such force. In analyzing the reasonableness of a parent's belief, we are guided by the statute's requirement that the force exercised by the parent be employed for the purpose of preventing or punishing the child's misconduct. 17–A M.R.S.A. § 106(1). Accordingly, in using force, the parent must maintain reasonable control over the outcome or physical consequences to the child so that the force used is designed to prevent or punish misbehavior. When a parent throws a child, however, the outcome of the initial use of force is likely to be beyond the parent's control. Once the child has been released with the force of a throw as significant as was presented here, the parent cannot be certain of where the child will land or whether the child will sustain significant pain or serious injury as a result.[11]

[¶ 19] It would, therefore, be well within the province of the jury to conclude any

8. Assault requires proof that York caused bodily injury "intentionally, knowingly, or recklessly." 17–A M.R.S.A. § 207(1) (1983). Because recklessness is an element of the crime, and the reasonableness of York's belief is at issue due to the parental control justification defense, York "may be convicted 'only if holding the belief, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to the person, is *grossly deviant* from what a reasonable and prudent person would believe in the same situation.'" *State v. Wilder,* 2000 ME 32, ¶ 27, 748 A.2d 444, 451 (citations omitted) (emphasis added).

9. A similar analysis occurs regarding duress and self-defense defenses. *Cf. State v. Knights,* 482 A.2d 436, 442 (Me.1984) (holding that the jury rationally could have concluded that defendant was not entitled to defense of duress because the jury could have rationally disbelieved either defendant's statements that he was threatened with serious bodily injury or death or that the threats were such that a "reasonable person in the defendant's situation" would not be able to resist); *State v. Lagasse,* 410 A.2d 537, 542 (Me.1980) (holding that the jury could rationally conclude that self-defense was not available to the defendant because the defendant did not reasonably believe either that it was necessary to use deadly force or that the victim was about to use deadly force against him). Our inadvertent use of "and" rather than "or" in the last sentence of paragraph forty-five of the *Wilder* opinion should not be understood to change the law.

10. The greenish color of the bruise indicates that the bruise was a few days old.

11. Several states have explicitly eliminated throwing as a legitimate method of punishment or correction. For example, the State of Washington provides, in pertinent part: "The following actions are presumed unreasonable when used to correct or restrain a child: (1) *Throwing,* kicking, burning, or cutting a child." WASH. REV. CODE ANN. § 9A.16.100 (West 2000) (emphasis added). Delaware has similarly declared that force is not justified if it includes throwing the child. DEL. CODE ANN. tit. 11, § 468 (1999). Minnesota provides that throwing a child is not a reasonable and moderate method of discipline. MINN. STAT. ANN. § 626.556 (West 2000).

belief held by York that throwing Kelly in order to discipline her for her conduct was not reasonable. The evidence was also sufficient for the jury to have decided that throwing a child does not represent a method of correction or a reasonable means to obtaining the child's attention and compliance, but rather represents an adult who has lost control of his own responses.[12] Thus, the jury would have been justified in finding any belief held by York that throwing Kelly was necessary to control her behavior to have constituted a gross deviation from what a reasonable and prudent parent would have deemed necessary in the same situation.

[¶ 20] Moreover, the position now asserted by York was belied by his own testimony before the jury. He denied having thrown Kelly in order to discipline her because "[t]hrowing my kids into walls would cause harm and pain." If the jury believed Kelly's testimony that her father picked her up and threw her onto her bed and into a wall, there was ample evidence before them, including York's own statement, from which they could conclude that any belief on York's part of the necessity of that action would have constituted a gross deviation from the considerations of reasonable and prudent parent.

[¶ 21] Accordingly, the trial court did not err in denying York's motion for a judgment of acquittal.

**B. Motion for a New Trial**

■ [¶ 22] The complaint alleged that York violated 17–A M.R.S.A. § 207 by "knowingly, intentionally or recklessly" causing "bodily injury or offensive physical contact to 9 year old Kelly York by, *striking her in the temple with a closed fist.*" The clerk read that language to the jury at the beginning of the trial. It is undisputed that no evidence was presented at trial

regarding a closed fist or a punch. York therefore contends that the reading of the errant phrase in the complaint unfairly prejudiced him and that he is entitled to a new trial.[13]

■ [¶ 23] When the matter was brought to the attention of the trial court, it correctly instructed the jury that they could not find an assault based on striking with a closed fist because there was no evidence of any such action. The defendant did not object to the instruction and sought no other relief from the court. We presume that the jury followed the trial court's instructions. *See State v. Bennett,* 658 A.2d 1058, 1063 (Me.1995).

■ [¶ 24] Absent the closed fist language, the complaint was not defective. The remainder of the complaint alleges each element of the charge. *See* 17–A M.R.S.A. § 207(1). The fact that the complaint does not contain the particular method of assault described by Kelly at trial does not cause the complaint to be defective. *State v. Sprague,* 583 A.2d 203, 204–05 (Me.1990). The trial court did not err in denying York's motion for a new trial.

**C. Sentence**

■ [¶ 25] Finally, York challenges the nine-month sentence imposed by the court. A defendant who "has been convicted of a criminal offense and sentenced to a term of imprisonment of *one year or more* ... may apply to the Supreme Judicial Court, sitting as the Law Court, for review of the sentence." 15 M.R.S.A. § 2151 (Supp. 2000) (emphasis added). York's sentence is less than one year in length. Moreover, even if York's sentence exceeded a year, "no appeal of the sentence may proceed before the Supreme Judicial Court unless leave to appeal is first granted by the

12. No evidence was presented to suggest that Kelly was in a situation of physical danger or needed to be rapidly moved out of harm's way.

13. M.R.Crim. P. 33 states, in pertinent part, that "[t]he court on motion of the defendant may grant a new trial to the defendant if required in the interest of justice." M.R.Crim. P. 33.

[Sentence Review Panel]." 15 M.R.S.A. § 2152 (Supp.2000); *accord* M.R.Crim. P. 40(a). York did not file an application for leave to appeal his sentence.

[¶ 26] There is no jurisdictional infirmity of record to be corrected, and York's appeal does not claim that the length of the sentence exceeded the authority of the court. *See State v. Frechette,* 687 A.2d 628, 629 (Me.1996). Accordingly, York's appeal of his sentence is not properly before us for review and must be dismissed.

The entry is:

Judgment affirmed. Appeal from the sentence imposed by the Superior Court dismissed.

Kenneth W. Fredette, Esq., Newport, for appellant.

Lawrence A. Lunn, Esq., Hall & Lunn, Bangor, for appellees.

Randy G. Day, Esq., Garland, Guardian ad Litem.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.