2001 ME 97

**In re DOROTHY V.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 12, 2001.

Decided June 28, 2001.

Ferdinand Slater, Hancock, Schuyler Steele, Newport, for appellants.

G. Steven Rowe, Attorney General, Patrick Downey, Asst. Attorney General, Augusta, for appellee.

Wayne Doane, Exeter, Guardian ad Litem.

Panel: WATHEN, C.J., and RUDMAN, CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] The adoptive parents of Dorothy V. appeal from a judgment of the District Court (Newport, *MacMichael, J.*) finding that Dorothy was in circumstances of jeopardy to her health and welfare. *See* 22 M.R.S.A. §§ 4035 & 4036 (1992 & Supp. 2000). The parents contend that the court erred in determining that (i) the corporal punishment inflicted upon Dorothy exceeded reasonable parental discipline, and (ii) the evidence was sufficient to support a finding that circumstances of jeopardy existed. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] The record supports the following facts: Dorothy's parents adopted Dorothy and her brother Patrick in January 1998. Dorothy is twelve years old. The parents also have one biological son, Jason, who is twenty-three years old. Jason is more than six feet tall and weighs in excess of three hundred pounds.

[¶ 3] In the early afternoon of June 22, 2000, Dorothy was preparing for lunch when she hit the spray nozzle on the sink causing water to spray on some clean dishes. Jason then asked his mother if she wanted him to spank Dorothy. The mother replied: "if you have time ... then, yuh, that would be a good idea." She instructed Jason to "beat" Dorothy thirty-five times with a leather belt as a punishment for spraying the water. The court's findings reflect what followed:

> After Jason had hit Dorothy approximately five (5) times with the belt, Dorothy was told by her mother to change into lighter clothes as the clothes she was wearing were providing too much protection from the blows from the belt.

Dorothy left the room to change her clothes and ran out of the house.

Dorothy's brother, Patrick, was sent to catch her. A motorist saw Dorothy on the ground, by the side of Lower Main Street in Dexter, with Patrick on top of her. Dorothy broke away from her brother, ran in front of the motorist's car to stop the motorist, jumped inside of the car, and locked the door. Dorothy appeared frightened to the point of being frantic. She was screaming, 'Get him away from me.' Her brother came to the door of the car and advised the motorist that Dorothy had to return home to finish her beating. The motorist took Dorothy to the Dexter Police Department. Dorothy had large welts on her outer thigh which were linear in shape and which extended to her buttocks. Those welts were caused by the blows from the belt. She also had numerous scratches on her arms. The welts were visible for approximately three weeks after Dorothy was struck with the belt.

Dorothy's mother ... told an investigating officer that she had asked her son, Jason, to administer the beating with the belt because, if [the mother] had administered the beating, there would have been nothing left of Dorothy.

Dorothy had been beaten with a belt as a form of punishment several times in the past. Other forms of punishment which Dorothy's parents had administered to her included locking her in her room and included requiring her to stand for lengthy periods of time while holding books in her outstretched hands. When locked in her room, Dorothy had to call to a family member to let her out if she had to go to the bathroom. Once, when no one answered her call, she went to the bathroom in the cat's litter box in her room. Another form of punishment was having her bedroom be a room with no light, either natural or artificial, and little heat. Among other things for which Dorothy had been punished were failing to write in her journal and not doing well in school.

Dorothy was required by her parents to do a large number of household chores on a regular basis. Dorothy's parents have told her they shouldn't have adopted her and they were sorry they did.

These findings are fully supported by evidence in the record.

[¶ 4] Dorothy's caseworker testified that the parents were unwilling to keep Dorothy in their home unless they could continue to discipline her with a belt. The caseworker also testified that the parents showed no remorse for the beatings and were unwilling to explore alternative forms of discipline. The parents refused to enter into a safety plan whereby they would agree not to inflict corporal punishment on Dorothy.

[¶ 5] As a result of the June 22 events, the Department of Human Services (DHS) obtained a temporary child protection order and received temporary custody of Dorothy. The court conducted a hearing on the final protection order on October 26, November 7, and November 21, after which it issued an order finding, by a preponderance of the evidence, that Dorothy was in circumstances of jeopardy to her health and welfare. *See* 22 M.R.S.A. § 4036. This appeal followed.

## II. DISCUSSION

### A. Parental Discipline Justification

[¶ 6] Relying on *State v. Wilder*, 2000 ME 32, 748 A.2d 444, Dorothy's parents contend that the punishments inflicted on Dorothy constitute reasonable parental discipline. Applying *Wilder*, the trial

court ruled that the parents' actions exceeded any justifiable discipline.

[¶ 7] *Wilder* addressed criminal law justifications pursuant to 17–A M.R.S.A. § 106(1) (1983).[1] There, we recognized a parent's limited privilege to apply a reasonable degree of force that he or she reasonably believes necessary to prevent or punish a child's misconduct. *Wilder*, 2000 ME 32, ¶ 44, 748 A.2d at 455. In criminal prosecutions where the facts generate the parental control justification defense, the State bears the burden of proving beyond a reasonable doubt that either: (1) the degree of force used caused physical injury greater than transient pain and/or minor temporary marks; or (2) the parent's belief that the degree of force used was necessary to control the child's misconduct "was grossly deviant from what a reasonable and prudent parent would believe necessary in the same situation." *State v. York*, 2001 ME 30, ¶ 15, 766 A.2d 570, 574–75 (citing *Wilder*, 2000 ME 32, ¶ 45, 748 A.2d at 455). In a criminal case, once the facts place a justification defense in issue, the State "must disprove its existence beyond a reasonable doubt." *Id.* ¶ 12, 766 A.2d at 574 (quoting 17–A M.R.S.A. § 101(1) (1983 & Supp.2000)).

[¶ 8] The present case, however, is not a criminal prosecution. In this case, the court needed only to find, as a matter of fact, that it was more likely than not that Dorothy would incur serious harm, or be subject to a threat of serious harm, if she was returned to the custody of her parents. 22 M.R.S.A. § 4002(6) (1992).[2] Unlike the State's burden in a criminal prosecution, DHS was not required to produce evidence disproving the parents' claimed parental control justification. Jeopardy to the health and welfare of the child was the proper focus of the court's inquiry. Thus, the criminal parental control justification defense does not apply to the circumstances of this child protection case.

[¶ 9] Even if the criminal standard discussed in *Wilder* did apply to this case, as suggested by the trial court, the result would not change. Dorothy had welts and bruises that lasted for three weeks. She was beaten with a belt by a very large man as a common form of punishment. She incurred additional extraordinary forms of punishment including isolation in an unheated room and being forced to relieve herself in a litter box. The parents' consistent use of excessive discipline in this case is far more severe than the three discrete instances of parental discipline analyzed in *Wilder*. *See Wilder*, 2000 ME 32, ¶¶ 47–49, 748 A.2d at 456 (discussing father quieting his son by twice grabbing his shoulder and once grabbing his face and telling him to "shut up").

[¶ 10] The evidence in this case is sufficient to establish, as the trial court found, that the harm Dorothy incurred involved something more than transient pain or minor temporary marks, and that the degree

---

1. The statute provides, in pertinent part, that a "parent ... responsible for the long term general care and welfare of a person is justified in using a reasonable degree of force against such person when and to the extent that he reasonably believes it necessary to prevent or punish such person's misconduct."

2. Serious harm is defined, in one alternative, as a "serious mental or emotional injury or impairment ... evidenced by serious mental, behavioral or personality disorder, including severe anxiety, depression or withdrawal, untoward aggressive behavior, seriously delayed development or similar serious dysfunctional behavior ...." 22 M.R.S.A. § 4002(10)(B) (1992). Under this definition, a court could find serious harm based on neglect or emotional abuse or deprivation, without any evidence of assault or other physical injuries to the child.

of force used was grossly deviant from what a reasonable parent would believe to be necessary in a similar situation. *See, e.g., State v. Dodd,* 503 A.2d 1302, 1303–04 (Me.1986). The trial court did not need to apply *Wilder,* and in so doing found more than it was required to find. A determination that circumstances of jeopardy existed could have been supported even absent any findings of physical abuse. *See, e.g., In re Ashley S.,* 2000 ME 212, ¶¶ 16–17, 762 A.2d 941, 947–48 (concluding that a showing of severe neglect, absent affirmative abuse or assaultive behavior, is sufficient to support a finding of aggravated circumstances).

**B. Sufficiency of the Evidence**

█ [¶ 11] After the trial court has conducted a hearing on the petition for final protection order, it must "make a finding, by a preponderance of the evidence, whether the child is in circumstances of jeopardy to his health and welfare." 22 M.R.S.A. § 4035(2). Jeopardy is defined as "serious abuse or neglect," evidenced by "serious harm," the "threat of serious harm," or the "deprivation of adequate … shelter, supervision or care." 22 M.R.S.A. § 4002(6).

█ [¶ 12] When reviewing a challenge to the sufficiency of the evidence on an appeal of a final child protection order, we will not disturb the District Court's findings unless such findings are clearly erroneous. *In re Kaleb D.,* 2001 ME 55, ¶ 13,

769 A.2d 179, 185 (citing *In re Thomas B.,* 1998 ME 236, ¶ 2, 719 A.2d 529, 530). We must uphold the findings, therefore, "if any evidence in the record can rationally be read to establish," as more likely than not, that Dorothy was in circumstances of jeopardy to her health and welfare. *In re Chesley B.,* 499 A.2d 137, 139 (Me.1985) (discussing the appellate standard of review governing factual findings in the context of a termination of parental rights action).

[¶ 13] In this case, the evidence is sufficient to support the court's jeopardy finding. As discussed above, Dorothy's parents employed extraordinary disciplinary measures. In addition, the parents have refused to alter their disciplinary practices and have refused to agree to any form of a safety plan that excepts corporal punishment. Accordingly, the evidence in the record is sufficient to support the court's finding that Dorothy would be in circumstances of jeopardy to her health and welfare if she was returned to the custody of her parents.[3]

The entry is:

Judgment affirmed.

---

**3.** The parents also contend that the court abused its discretion in denying three pretrial motions they filed seeking Dorothy's out-of-state medical records. The court was satisfied that all medical records in DHS's possession had been supplied to the parents. The parents cite no evidence establishing that DHS had medical information that it neglect-

ed to release. Accordingly, despite the parents' assertions to the contrary, the court's denial of the motions was not an abuse of discretion. *See In re Kayla S.,* 2001 ME 79, ¶ 9, 772 A.2d 858. The final issue the parents raise on appeal, an alleged burden shift on the visitation issue, lacks merit. *See* 22 M.R.S.A. § 4041(1)(A)(1)(e) (Supp.2000).